**CITY OF DALLAS, Dallas Independent School District, and County of Dallas, Appellants,**

v.

**CORNERSTONE BANK, N.A., Appellee.**

No. 05–93–00053–CV.

Court of Appeals of Texas, Dallas.

June 2, 1994.

Michael W. Deeds, Alan B. Rich, Dallas, for appellants.

Robert D. Lybrand, Dallas, for appellee.

Before McGARRY, C.J., and OVARD and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This appeal arises out of a suit to determine the priority of two competing liens against personal property and the amount of taxes, penalties, and interest secured by a tax lien on the personal property. The City of Dallas, the Dallas Independent School District, and the County of Dallas (Tax Authorities) appeal from a summary judgment rendered in favor of Cornerstone Bank (Cornerstone).

The Tax Authorities bring two points of error challenging the trial court's disposition of the parties' opposing motions for summary judgment. Cornerstone filed a motion to dismiss the appeal, contending that we should dismiss the Tax Authorities' appeal as untimely. Further, in one cross-point of error, Cornerstone contends that the trial court erred in denying its claims for actual and exemplary damages, attorney's fees, and interest. We deny Cornerstone's motion to dismiss. We sustain the Tax Authorities' points of error. Because of our disposition of the Tax Authorities' points of error, we do not reach Cornerstone's cross-point of error. We reverse the trial court's judgment in favor of Cornerstone and render judgment in part for the Tax Authorities. We remand this cause to the trial court for further proceedings.

## FACTUAL BACKGROUND

Cornerstone has a security interest in jewelry, precious stones, and other items owned by Kassees Precious Jewels, Inc. (Kassees). Kassees defaulted on its loan with Cornerstone. Before Cornerstone could foreclose on its security interest, the Tax Authorities seized the jewelry pursuant to tax warrants issued for the payment of Kassees's delinquent taxes, penalties, and interest for the tax years 1986, 1987, 1988, and 1989. The Tax Authorities published notice that they would offer the property for sale. The value

of the property seized by the Tax Authorities is $52,663.00.

Cornerstone brought suit against the Tax Authorities and Kassees requesting that the trial court (1) determine the amount of the tax lien so Cornerstone could pay that amount, extinguish the tax lien, and then foreclose on the jewelry; (2) render judgment against Kassees for all amounts Kassees owed Cornerstone and for foreclosure; and (3) find that the Tax Authorities converted the jewelry and were liable to Cornerstone for actual and exemplary damages, attorney's fees, interest, and costs.

The Tax Authorities filed an answer and counterclaim against Cornerstone. The Tax Authorities sought an order extinguishing Cornerstone's liens and claims against the jewelry and an order permitting them to proceed with the sale of the property.

## PROCEDURAL BACKGROUND

Cornerstone moved for partial summary judgment, addressing only the first of its three claims. Cornerstone sought a summary judgment that determined the amount of the tax lien. Further, Cornerstone wanted the summary judgment to provide that once Cornerstone paid that amount, the payment would extinguish the Tax Authorities' tax liens, that Cornerstone's lien would then be superior to any other liens, and that Cornerstone would be free to foreclose upon the jewelry.

On May 8, 1991, the trial court signed a summary judgment captioned, "FINAL JUDGMENT." The trial court found that the Tax Authorities' lien was superior to Cornerstone's lien only to the extent of the taxes due upon the property seized. The trial court found that the taxes on the property seized were $2,911.15. The trial court ordered that Cornerstone could extinguish the Tax Authorities' lien by tendering $2,911.15 into the court's registry. The trial court found that Cornerstone's lien then would be superior over any other liens. This part of the summary judgment disposed of the first of Cornerstone's three claims. Although not addressed in Cornerstone's motion for summary judgment, the trial court also granted Cornerstone judgment against

Kassees for $179,692.34, postjudgment interest, and foreclosure. This disposed of Cornerstone's second claim. The trial court's judgment concluded with a Mother Hubbard clause providing that "[a]ll relief not specifically granted herein is denied."

The Tax Authorities filed a notice of appeal on June 14, 1991. They nonsuited their counterclaim on July 3, 1991. Cornerstone moved to dismiss the appeal, arguing that the May 8 judgment was the final judgment and that the appeal was untimely. We denied Cornerstone's motion to dismiss. We determined that the May 8 judgment did not dispose of all of Cornerstone's claims. We sent the parties jurisdictional letters informing them that the judgment they were trying to appeal was interlocutory and unappealable. The letters directed the parties to file a supplemental transcript containing an order disposing of Cornerstone's claims for actual and exemplary damages and for postjudgment interest. We sent two more jurisdictional letters informing the parties that the judgment they sought to appeal was interlocutory, each time directing them to file a supplemental transcript with an order disposing of the remaining claims. The parties did not respond to any of these jurisdictional letters. On July 17, 1992, we dismissed the appeal. Mandate issued on September 21, 1992.

On August 5, 1992, the Tax Authorities moved for summary judgment in the trial court. The Tax Authorities sought a summary judgment that determined that their lien under the tax code was a "floating" lien against all property and that the property seized was subject to sale for all the taxes due by Kassees, not for just the taxes due upon each item of seized property. Further, the Tax Authorities wanted the summary judgment to provide that Cornerstone was not entitled to damages or attorney's fees. The trial court denied the Tax Authorities' motion for summary judgment on September 30, 1992. The trial court determined that its May 8, 1991 summary judgment was a final judgment. It concluded that it had lost ple-

nary jurisdiction and was powerless to rule upon any further motions.

The Tax Authorities moved to modify the trial court's September 30, 1992 order. On November 16, 1992, the trial court granted the motion to modify. The trial court again ruled that the May 8, 1992 summary judgment was a final judgment, but added the following language: "All additional relief sought by plaintiff, including all claims for actual damages and exemplary damages and attorney[']s fees, is DENIED."

## CORNERSTONE'S MOTION TO DISMISS

Cornerstone filed a motion to dismiss this appeal arguing that the May 8 judgment was the final judgment and that we should dismiss the appeal as untimely. In a February 17, 1993 presubmission opinion, this Court denied Cornerstone's motion to dismiss and held that the November 16, 1992 judgment was the final and appealable judgment. We directed the parties to file their briefs.

In its brief, Cornerstone continues its argument that we do not have jurisdiction over this appeal. Cornerstone requests that we reconsider the issue and allow the parties an opportunity to brief the applicable law and facts. Additionally, Cornerstone filed its second motion to dismiss the appeal in light of a recent Texas Supreme Court decision[1] addressing the issue of whether a "Mother Hubbard" clause in an order granting summary judgment makes an otherwise partial summary judgment final for appeal purposes.

Cornerstone contends that the supreme court's holding in *Mafrige v. Ross* requires the dismissal of this appeal for want of jurisdiction. *See Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex.1993). In *Mafrige*, the supreme court held that when an order granting summary judgment includes "Mother Hubbard" language or other language purporting to dispose of all claims or parties, the judgment should be treated as final for appeal purposes. *Mafrige*, 866 S.W.2d at 592.

1. *Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993). The supreme court issued *Mafrige* on October 27, 1993.

This is the second appeal involved in this case. In our July 1992 order dismissing the original appeal, we determined that the trial court's May 8, 1991 summary judgment was not a final judgment and that this Court did not have jurisdiction over the appeal. That order was not appealed. Mandate issued on September 21, 1992, and the order became final. The trial court issued a final judgment on November 16, 1992, and the Taxing Authorities perfected the current appeal. In this second appeal, we apply the law of the case doctrine to determine whether we should reconsider the issue of the finality of the May 8, 1991 judgment.

The law of the case doctrine is that principle mandating that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings of the same case. *Thomas v. Collins*, 860 S.W.2d 500, 502 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *J.O. Lockridge Gen. Contractors, Inc. v. Morgan*, 848 S.W.2d 248, 250 (Tex. App.—Dallas 1993, writ denied). The doctrine's intent is to achieve uniformity of decision as well as judicial economy and efficiency. *Thomas*, 860 S.W.2d at 502; *Morgan*, 848 S.W.2d at 250. The doctrine applies if the facts in the second trial are substantially the same as in the first trial or so nearly the same that they do not materially affect the legal issues involved in the second trial. *Morgan*, 848 S.W.2d at 250. A reviewing court does not again pass upon any matter either presented to or directly passed upon or which was in effect disposed of on a former appeal to that court. *Id.*

Cornerstone raises in this appeal the same judgment finality issue that it raised in the first appeal. We determined in the prior appeal that the May 8, 1991 summary judgment was not a final judgment. Our decision was correct under the law in place at the time we decided the issue. *See Sakser v. Fitze*, 708 S.W.2d 40, 43 (Tex.App.—Dallas 1986, no writ). That decision became a final non-appealable order on the issue before *Mafrige* was decided. Nothing in *Mafrige* suggests that the supreme court intended to invalidate or otherwise render unenforceable prior final and non-appealable orders. *Maf-*

*rige* does not eliminate or override the law of the case doctrine. We do not again pass upon the identical issue that we disposed of in the first appeal. *Morgan*, 848 S.W.2d at 250. The parties to this appeal are bound by our prior determination. *See Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n*, 863 S.W.2d 742, 745 (Tex.App.—Austin 1993, writ denied). We conclude that the law of the case doctrine governs the issue concerning the finality of the May 8, 1991 judgment. Our determination in the first appeal that the May 8, 1991 judgment was interlocutory and not appealable applies as a matter of law. We deny Cornerstone's motion to dismiss.

## SUMMARY JUDGMENT

In their first and second points of error, the Tax Authorities contend that the trial court erred in granting Cornerstone's motion for summary judgment and denying their motion for summary judgment. Where both parties file motions for summary judgment, and one is granted and one is denied, we may consider the denial if the appealing party complains of both the granting of the opponent's motion and the denial of its own motion. *Utica Nat'l Ins. Co. v. Fidelity & Casualty Co.*, 812 S.W.2d 656, 658 (Tex. App.—Dallas 1991, writ denied). We will consider all evidence accompanying the motions in determining whether the trial court should have granted either side's motion. *Vest v. Gulf Ins. Co.*, 809 S.W.2d 531, 533 (Tex.App.—Dallas 1991, writ denied).

### A. Standard of Review

A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show that no genuine issue exists regarding any material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). Under rule 166a, both plaintiff and defendant may move for summary judgment. TEX.R.CIV.P. 166a. Each party must carry its own burden, and neither can prevail due to the other's failure to discharge its burden. *See Cove Inv., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980).

■ In reviewing the summary judgment evidence, we apply the following standards:

1. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ The material facts in this case are not in dispute. This case involves pure questions of law. Specifically, this case involves the statutory interpretation of sections 32.01, 32.-05, and 33.21 of the property tax code.[2] *See* Act of June 13, 1979, 66th Leg., R.S., ch. 841, 1979 Tex.Gen.Laws 2287, *amended by* Act of June 19, 1983, 68th Leg., R.S., ch. 851, § 22, 1983 Tex.Gen.Laws 4827–28, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 1031, § 3, 1993 Tex.Gen.Laws 4440–41 (current version at Tex.Tax Code Ann. § 32.01 (Vernon Supp.1994))[3]; Tex.Tax Code Ann. § 32.05 (Vernon 1992); Tex.Tax Code Ann. § 33.21 (Vernon 1992). Accordingly, this is a proper case for summary judgment. *See Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962).

## APPLICABLE LAW

Section 32.01 of the property tax code creates a lien on property to secure the payment of taxes:

On January 1 of each year, a tax lien attaches to property to secure the payment

2. All references will be to the Texas Tax Code unless otherwise stated.

3. Section 32.01 currently provides:
(a) On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on *the* property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.
(b) *A tax lien on inventory, furniture, equipment, or other personal property is a lien in*

of all taxes, penalties, and interest ultimately imposed for the year on that property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

Act of June 13, 1979, 66th Leg., R.S., ch. 841, 1979 Tex.Gen.Laws 2287 (amended 1993). Section 32.05 of the property tax code then provides for the priority of tax liens over other property interests:

(b) Except as provided by Subsection (c) of this section, a tax lien provided by this chapter takes priority over the claim of any creditor of a person whose property is encumbered by the lien and over the claim of any holder of a lien on property encumbered by the tax lien, whether or not the debt or lien existed before attachment of the tax lien.

Tex.Tax Code Ann. § 32.05 (Vernon 1992). One available method of enforcing the tax lien is set forth in section 33.21 of the property tax code which provides for seizure of personal property for the payment of delinquent taxes:

(a) A person's personal property is subject to seizure for the payment of a delinquent tax, penalty, and interest he owes a taxing unit on property.

Tex.Tax Code Ann. § 33.21 (Vernon 1992).

## STATUTORY CONSTRUCTION

■ We construe a statute to give effect to the legislative intent. Tex.Gov't Code Ann. § 312.005 (Vernon 1988); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993); *Dallas Morning News Co. v. Board of Trustees of Dallas Indep. Sch. Dist.,* 861 S.W.2d 532, 535 (Tex.App.—Dallas 1993, writ denied). A

*solido and attaches to all inventory, furniture, equipment, and other personal property that the property owner owns on January 1 of the year the lien attaches or that the property owner subsequently acquires.*
(c) The lien under this section is perfected on attachment and, except as provided by Section 32.03(b), perfection requires no further action by the taxing unit.
Tex.Tax Code Ann. § 32.01 (Vernon Supp.1994) (emphasis added).

statute shall be liberally construed to achieve its purpose and to promote justice. TEX. GOV'T CODE ANN. § 312.006 (Vernon 1988). When wording in a statute is ambiguous, we consult statutory construction rules and related legislative history. *Dallas Morning News*, 861 S.W.2d at 535. We do not interpret a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *Id.*

If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate. *Id.* Where language in a statute is unambiguous, we must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Monsanto*, 865 S.W.2d at 939. Words in statutes have their ordinary meaning unless the statute defines them or they are connected with and used with reference to a particular trade or subject matter or are a term of art. TEX.GOV'T CODE ANN. § 312.002 (Vernon 1988); *Dallas Morning News*, 861 S.W.2d at 535.

In construing a statute, regardless of whether the statute is considered ambiguous on its face, we may consider the object sought to be attained and the consequences of any particular construction. TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988).

## THE PARTIES' CONTENTIONS

### A. The Tax Authorities

The Tax Authorities contend that the trial court improperly interpreted sections 32.01, 32.05, and 33.21 of the property tax code. They argue that the tax collection and enforcement scheme allows for the attachment of tax liens to all of a delinquent taxpayer's personal property to secure the payment of taxes. The Tax Authorities argue that section 32.01 places a lien against any and all property against which taxes are assessed, or a "floating" lien against all property. Further, they argue that they can seize a delinquent taxpayer's personal property under the authority of section 33.21 and sell as much of it as is necessary to satisfy the taxpayer's total tax liability. The Tax Authorities maintain that the tax lien has priority over any ordinary secured creditor's lien.

### B. Cornerstone

Cornerstone concedes that the Tax Authorities have a superior tax lien created by section 32.01. It maintains, however, that the tax lien secures only the taxes, penalties, and interest assessed against the actual property seized. Cornerstone claims that no lien is given on property to secure taxes due on other property. It argues that the tax due against an individual piece of property is secured only by a lien on that particular item of property. Cornerstone further argues that the tax lien does not secure prior years' taxes on property acquired in subsequent years. Therefore, the only tax claims that are entitled to priority over its security interest are those claims for taxes imposed on the seized property. Cornerstone maintains that its security interest in the seized property is superior to the Tax Authorities' claims for taxes assessed against any of Kassees's property other than the property seized.

## APPLICATION OF LAW TO THE FACTS

The principal issue presented is whether the section 32.01 tax lien attaches only to each individual item of property against which the tax is assessed or whether the lien is a "floating lien" which attaches to all inventory items. Section 32.01 provides that "a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on that property...." Act of June 13, 1979, 66th Leg., R.S., ch. 841, 1979 Tex.Gen.Laws 2287 (amended 1993). Thus, the resolution of this issue rests upon the meaning of "that property."

We presume that in enacting the statute, the legislature intended a result feasible of execution. TEX.GOV'T CODE ANN. § 311.021 (Vernon 1988). We, therefore, presume that the legislature intended an interpretation that results in the enforcement of tax liens.

According to Cornerstone's interpretation of the statute, "that property" refers to each individual item of property. If

each item of property were subject to sale only for the delinquent tax owed on that particular piece of property, it would be virtually impossible to enforce the tax on inventory property. Cornerstone's interpretation would require that each and every item of inventory property be identified on January 1 of each year and that the tax lien attach to each item of property identified. Although a taxpayer may acquire new inventory property after January 1, Cornerstone's interpretation would not allow that property to be subject to payment for delinquent taxes because no lien had attached to such property. Since inventory usually "turns over" in a matter of months, by the end of the year there may be no remaining inventory which was owned by a given taxpayer on the first day of each year. Thus, there may be no inventory property remaining on which the tax lien had attached. If we followed Cornerstone's interpretation of the statute, there might never be an enforceable lien on personal property inventory under section 32.01.

For the statute to be enforceable, inventory property must be assessed as a unit. The tax lien must attach to all inventory property as a whole. The unit as it exists at the time of seizure for the payment of delinquent taxes must be subject to sale in order to enforce the payment of the tax.

We reject Cornerstone's interpretation of the statute and conclude that, with regard to inventory items, "that property" refers to the category of property taxed rather than each individual item of property. The tax lien on inventory property attaches to all inventory property that the taxpayer owns on January 1 of the year the lien attaches or to all inventory property that the taxpayer subsequently acquires. We conclude that the Tax Authorities had a tax lien on all inventory property that was in Kassees's possession at the time the Tax Authorities conducted the seizure. Under the authority of section 33.-23, the Tax Authorities were entitled to seize as much of Kassees's property as necessary to recover payment of all delinquent taxes,

penalties, and interest owed by Kassees for the years 1986, 1987, 1988, and 1989. *See* Tex.Tax Code Ann. § 33.23 (Vernon 1992). Accordingly, the trial court erred in granting Cornerstone's motion for summary judgment and denying the Tax Authorities' motion for summary judgment.[4] We sustain the Tax Authorities' first and second points of error.

Our conclusion concerning the attachment of the tax lien also resolves the priority issue. Section 32.05 expressly establishes the priority of a tax lien. Tex.Tax Code Ann. § 32.05 (Vernon 1992). Because of our disposition of the Tax Authorities' points of error, we do not address Cornerstone's cross-point of error.

We reverse the trial court's judgment to the extent that it determines the amount of taxes and property secured by the tax lien and to the extent that it orders enforcement of its judgment concerning the seized property. We render judgment that the Tax Authorities had a tax lien on all inventory property that was in Kassees's possession at the time the Tax Authorities conducted the seizure. In all other respects, we remand this cause to the trial court for further proceedings consistent with this opinion.

---

4. Although the trial court did not consider the Tax Authorities' motion for summary judgment on its merits, the Taxing Authorities' and Cornerstone's motions for summary judgment presented the same legal issue to the trial court concerning the interpretation of section 32.01. We, therefore, render the judgment that the trial court should have entered on this issue. *See Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984).