**Opinion issued May 18, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00753-CV

———————————

## KENNETH A. TOTZ, D.O., FACEP, Appellant

## V.

## TELICIA OWENS, Appellee

---

### On Appeal from the 152nd District Court
### Harris County, Texas
### Trial Court Case No. 2012-07534

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Kenneth A. Totz, D.O., FACEP,[2]

challenges the trial court's order denying his motion to dismiss the health care

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon Supp. 2016).

[2]     Telicia Owens sued "Kenneth A. Totz, M.D."  We note that, in his answer, Dr. Totz identifies himself as "Kenneth A. Totz, D.O., FACEP," as does the trial court in its

liability claims[3] made against him by appellee, Telicia Owens, in her suit for negligence and gross negligence. In his sole issue, Totz contends that the trial court erred in denying his motion to dismiss Owens's claims on the ground that she failed to timely serve him with a qualified expert report.[4]

We affirm.

## Background

In her petition, Owens alleges that on February 6, 2010, she went to the Emergency Department at Memorial Hermann, complaining of a severe headache. She was diagnosed with a migraine, tension headache, and "headache associated with sinuses," but "[n]o diagnostic testing was done to rule out any internal problems." On February 10, 2010, Owens returned to the Emergency Department at Memorial Hermann, complaining of the "same persisting symptoms" and was diagnosed with a headache and sinitus. Again, no diagnostic testing was performed.

---

order denying his motion to dismiss. Our style of the case is in accord with the trial court's order. *See Owens v. Handyside*, 478 S.W.3d 172, 175 n.1 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (clarifying style of case); *see also Strobel v. Marlow*, 341 S.W.3d 470, 471 n.1 (Tex. App.—Dallas 2011, no pet.).

3       *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2017).

4       *See id.* § 74.351(a) (Vernon 2017) (governing medical expert reports). In 2013, the legislature amended section 74.351 of the Texas Medical Liability Act. *See* Act of May 26, 2013, 83d Leg., R.S., ch. 870, § 2, 2013 Tex. Sess. Law Serv. 2220, 2220. The amended provision applies to all suits filed after September 1, 2013. Because Owens filed her original petition in 2012, we apply the former version of section 74.351 to her claims. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351).

2

On February 21, 2010, Owens returned again to the Emergency Department at Memorial Hermann, complaining of a headache and blurry vision. Dr. Totz and another physician treated her, and she was again diagnosed with a headache. No diagnostic testing was performed.

Subsequently, on February 24, 2010, Owens went to Methodist Hospital "for [an] assessment of the same symptoms that she complained of at Memorial Hermann." Doctors administered a "CT scan," which showed that she was suffering from a head bleed. Methodist admitted Owens into its Intensive Care Unit, and it discharged her on March 3, 2010.

On April 22, 2010, Owens went to "Ben Taub General Hospital complaining of sudden blindness, which resulted in [the] placement of a lumbar shunt." On May 14, 2010, she returned to Ben Taub, "complaining of sutures coming out, shunt leak[age], blurred vision, and [a] headache." Ben Taub admitted Owens for evaluation and subsequently discharged her. On May 17, 2010, Owens again returned to Ben Taub, "complaining of [a] headache, chest pain, and neck stiffness." Her shunt was infected, and it was removed. Owens was "found to have been infected with MRSA—Methicillin Resistant Staphyloccus Aureus."

Owens further alleges that she sustained permanent damage to her optic nerve and is completely blind in both of her eyes. She also suffers from continuous damage

3

and pain.  However, Owens does not specify in her petition the medical cause or reason for her loss of vision and residual damage and pain.

Owens brings health care liability claims against Dr. Totz for negligence and gross negligence, specifically alleging that he:

- Failed to obtain an accurate assessment of Owens;

- Failed to notice signs and symptoms of "Cerebral Venous Sinus Thrombosis" ("CVST");

- Failed to accurately and timely diagnose Owens;

- Failed to consider possible explanations and respond to severe headaches and blurry vision;

- Failed to order appropriate radiological studies;

- Failed to make a medical diagnosis based on Owens's clinical condition;

- Failed to consult with a neurologist or other specialist while Owens was in the emergency department;

- Failed to develop and carry out a proper treatment plan for Owens;

- Failed to admit Owens to the "Neurological ICU";

- Failed to order thrombolytic medication necessary to attempt to dissolve the thrombosis;

- Failed to adhere to "Federal Laws regarding EMTALA regarding emergently treating a patient regardless of [her] inability to pay";

- Failed to order appropriate diagnostic tests and treatments even once CVST was suspected as a possible cause of Owens's symptoms; and

4

- Negligently managed a patient with CVST.

And Owens asserts that, "[a]s a result of the above-noted acts of negligence," Totz directly and proximately caused her injuries, losses, and damages.

To support her claims, Owens, on or about May 29, 2012, filed and served upon Dr. Totz a medical expert report authored by Brian C. Richardson, M.D. On June 19, 2012, Totz filed his objection to Dr. Richardson's report, asserting that it did not sufficiently address the elements of standard of care, breach of the standard, and causation and Richardson, a neurologist, is not qualified to opine on the standard of care of hospital emergency room doctors or causation. Further, in his objection, Totz noted:

> In support of [Owens]'s health care liability claim, and pursuant to Texas Civil Practice & Remedies Code § 74.351(a), [Owens] offered the report of Dr. Richardson. . . .
>
> In accordance with Texas Civil Practice and Remedies Code § 74.351(a), Dr. Totz's Objection is filed within twenty-one (21) days of the date of *service* of Dr. Richardson's expert report.

(Emphasis added.) Totz also attached to his objection, as "Exhibit A," Richardson's report, as well as its accompanying transmittal letter, which were both sent by Owens on May 29, 2012.

On July 17, 2012, Owens filed her response to Dr. Totz's objection, asserting that Dr. Richardson's report is sufficient and she timely served Richardson's expert report on May 29, 2012.

5

On August 15, 2012, Dr. Totz filed a "Supplemental Objection" to Dr. Richardson's expert report, moving to dismiss Owens's health care liability claims against him for failure to timely serve him with the report. Totz attached to his supplemental objection his affidavit and the affidavit of his attorney, Charles B. Holm. Totz testified that he had "never received a copy of Dr. Richardson's Expert Report *via* certified mail, return receipt requested at [his] personal residence," he "never executed" the specific green card attached to Owens's response, and he was not "served" in person with the expert report. Although Holm testified that he had "never received a copy of Dr. Richardson's Expert Report from [Owens] or her attorney on or before June 6, 2012,"[5] and neither had anyone at his law firm, he conceded that he had "obtained a copy of Dr. Richardson's Expert Report through [unspecified] alternative means." Owens did not file a response to Totz's supplemental objection.

After a hearing, the trial court sustained Dr. Totz's specific objection that Owens had failed to timely serve him with Dr. Richardson's expert report, and it dismissed Owens's claims against him. Owens then appealed to this Court,

---

[5] Owens was required to serve her expert report by June 6, 2012—120 days after the date she filed her original petition. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)).

6

challenging the trial court's dismissal and asserting that Richardson's expert report was timely served.

On appeal, we addressed the issue of whether Owens timely served Dr. Totz with Dr. Richardson's expert report and held that "the trial court erred in granting Totz's motion to dismiss Owens's claims against him on the ground that she failed to timely serve him with Richardson's expert report." *See Owens v. Handyside*, 478 S.W.3d 172, 175, 180–83 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). We then remanded Owens's health care liability claims against Totz to the trial court for further proceedings. *Id.* at 193.

After our remand, on August 3, 2016, Dr. Totz filed another objection to Dr. Richardson's report, again moving to dismiss Owens's health care liability claims against him for failure to timely serve him with Richardson's expert report. Totz attached to this objection new affidavits from himself, his attorney, Holm, and Catherine R. Thompson, the Healthcare Risk Manager for The University of Texas Health Science Center at Houston. In his objection, Totz asserted that this Court, in its previous opinion, "provide[d] a 'roadmap' for what evidence and affidavit testimony . . . Totz needed to provide in order to successfully re-assert an [o]bjection to . . . Richardson's [e]xpert [r]eport . . . relate[d] [to] proper 'service.'" After a hearing, the trial court denied Totz's motion.

## Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We review questions of law de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *CHCA W. Hous., L.P. v. Priester*, 324 S.W.3d 835, 837 (Tex. App.—Houston [14th Dist.] 2010, no pet.). And to the extent an issue involves statutory interpretation, we apply a de novo standard of review. *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011); *Priester*, 324 S.W.3d at 837. "[W]hether proper service [under Texas Civil Practice and Remedies Code section 74.351] has been made is a question of law . . . ." *Nexion Health at*

8

*Beechnut, Inc. v. Paul*, 335 S.W.3d 716, 718 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Univ. of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 62 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Univ. of Tex. Health Sci. Ctr. of Hous. v. Gutierrez*, 237 S.W.3d 869, 871 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (whether defendant properly served constituted "a purely legal issue").

## Timeliness of Expert Report

In his sole issue, Dr. Totz argues that the trial court erred in denying his motion to dismiss Owens's health care liability claims against him because she "fail[ed] to serve [Dr. Richardson's] expert report within 120 days of filing her original petition." In response, Owens asserts that "[t]he question of law of whether [she] made proper service of [Richardson's] expert report upon Totz was already decided by this [C]ourt and the trial court was bound by that decision." *See Owens*, 478 S.W.3d 180–83.

The law of the case doctrine is defined as the principle mandating that an appellate court's ruling on a question of law raised on appeal governs the case throughout any later stages of the same case. *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006); *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 336 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Under this doctrine, a court of appeals will ordinarily be

9

bound by its initial decision if there is a subsequent appeal in the case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003); *Entergy Corp.*, 469 S.W.3d at 336. "By narrowing the issues in [the] successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency." *Briscoe*, 102 S.W.3d at 716 (internal quotations omitted); *see also Entergy Corp.*, 469 S.W.3d at 336–37. It is based on public policy and is aimed at bringing finality to litigation. *Briscoe*, 102 S.W.3d at 716; *Entergy Corp.*, 469 S.W.3d at 337. The doctrine applies only to questions of law and does not apply to questions of fact. *Hudson*, 711 S.W.2d at 630; *Harris Cty. v. Walsweer*, 930 S.W.2d 659, 664 (Tex. App.—Houston [1st Dist.] 1996, writ denied). And it applies if the issues or the facts in the successive appeal are substantially the same as those involved in the first proceeding or so nearly the same that they do not materially affect the legal issues involved in the successive appeal. *Hudson*, 711 S.W.2d at 630; *City of Dall. v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 268 (Tex. App.— Dallas 1994, no writ).

A decision rendered on an issue by an appellate court does not, however, absolutely bar reconsideration of the issue on a second appeal. *Briscoe*, 102 S.W.3d at 716. Rather, the law of the case doctrine "merely expresses the practice of the courts generally to refuse to reopen what has been decided." *Entergy Corp.*, 469 S.W.3d at 337 (internal quotations omitted); *see also It's The Berrys, LLC v. Edom*

*Corner, LLC*, 271 S.W.3d 765, 771 (Tex. App.—Amarillo 2008, no pet.). The application of the law of the case doctrine lies within the discretion of the court, depending on the particular circumstances surrounding the case. *Briscoe*, 102 S.W.3d at 716; *Entergy Corp.*, 469 S.W.3d at 337; *see also LeBlanc v. State*, 826 S.W.2d 640, 644 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (appellate courts have discretion to depart from law of case doctrine in exceptional circumstances).

The doctrine has been held to apply "to implicit holdings, i.e., conclusions that are logically necessary implications of positions articulated by the court, as well as explicit ones." *Yazdchi v. San Antonio Fed. Credit Union*, No. 01-07-00189-CV, 2009 WL 417299, at *4 (Tex. App.—Houston [1st Dist.] Feb. 19, 2009, no pet.) (mem. op.) (internal quotations omitted); *Int'l Fid. Ins. Co. v. State*, No. 14-98-00324-CR, 2000 WL 729384, at *1 (Tex. App.—Houston [14th Dist.] June 8, 2000, pet. ref'd) (not designated for publication). And a reviewing court does not again pass upon any matter either presented to or directly passed upon or which was in effect disposed of on a former appeal to that court. *City of Dall.*, 879 S.W.2d at 268.

As noted above, the question of "whether proper service [under Texas Civil Practice and Remedies Code section 74.351] has been made is a question of law . . . ." *Nexion Health*, 335 S.W.3d at 718; *see also Callas*, 497 S.W.3d at 62;

11

*Gutierrez*, 237 S.W.3d at 871.  In our prior opinion, we addressed the legal question of whether Owens, in accordance with Texas Civil Practice and Remedies Code section 74.351, timely served Dr. Totz with Dr. Richardson's expert report.  *Owens*, 478 S.W.3d at 180–83.  And we specifically held that the trial court erred in granting Totz's motion to dismiss Owens's health care liability claims against him on the ground that she had failed to timely serve him with Richardson's expert report.  *Id.* at 183.

After we remanded the case to the trial court, Dr. Totz filed another objection to Dr. Richardson's report, again moving to dismiss Owens's health care liability claims against him for failure to timely serve him with Richardson's expert report. The trial court denied Totz's motion.

On appeal, Dr. Totz now asks us to again decide the legal question of whether Owens, in accordance with Texas Civil Practice and Remedies Code section 74.351, timely served him with Dr. Richardson's expert report.  *Cf. id.* at 180–83.  Expressly relying on *Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013), we previously held that Owens timely "served Dr. Richardson's initial expert report on . . . Totz." *Id.* at 183. We will not again pass upon the identical issue that we disposed of in the parties' first appeal.  *See City of Dall.*, 879 S.W.2d at 268; *J.O. Lockridge Gen. Contractors, Inc. v. Morgan*, 848 S.W.2d 248, 250 (Tex. App.—Dallas 1993, writ denied); *see also Yazdchi*, 2009 WL 417299, at *3–5 (concluding law of case doctrine foreclosed

12

reconsideration of same issue); *Aycock v. State*, 863 S.W.2d 183, 187 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) ("Matters of law which were disposed of on a former appeal will not again be decided by the court."). Nor do we conclude that our prior holding in this case is clearly erroneous. *See Briscoe*, 102 S.W.3d at 716–17. Thus, the parties to this appeal are bound by our prior determination. *See City of Dall.*, 879 S.W.2d at 268; *see also Calhoun v. State*, 951 S.W.2d 803, 806 (Tex. App.—Waco 1997, pet. ref'd) ("Despite possessing the power to re-examine points of error which have already been considered, appellate courts rarely engage in this type of review in order to 'prevent useless relitigation of issues already decided and to promote judicial economy.'" (quoting *LeBlanc v. State*, 826 S.W.2d 640, 644 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd)).

Accordingly, we hold that the trial court did not err in denying Dr. Totz's motion to dismiss Owens's health care liability claims against him on the ground that she failed to timely serve him with a qualified expert report.

We overrule Dr. Totz's sole issue.

### Conclusion

We affirm the order of the trial court.

Terry Jennings
Justice

13

Panel consists of Justices Jennings, Higley, and Massengale.