# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00167-CV

---

**417 N Comanche Street, LLC, Appellant**

**v.**

**Stephanie A. Haug, as Independent Executor of the Estate of Stephen M. Haug, Deceased; Pointe San Marcos Partners, L.P.; and Skyline Southwest Builders, Inc., Appellees**

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-21-000261, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

417 N Comanche Street, LLC sued Pointe San Marcos Partners, L.P. (PSMP), Skyline Southwest Builders, Inc., and the Independent Executor of the Estate of Stephen M. Haug, Deceased (jointly, "Defendants"), seeking damages, attorney's fees, and costs originating from a loan agreement.  417's petition alleged claims for breach of contract and declaratory judgment against all Defendants, fraud against the Haug Estate, damages and constructive trust against PSMP for violations of the Texas Assignment of Rents Act, and attorney's fees and costs against all Defendants.  Defendants counterclaimed seeking damages and a declaratory judgment that they did not owe the amounts sought by 417.  Both sides filed motions for summary judgment.  The trial court granted Defendants' motion, declaring that the total amount Defendants owed to 417 was significantly less than what 417 was seeking, denied 417's motion, and dismissed all of 417's claims.  417 perfected this appeal.  We reverse and render in part and reverse and remand in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case grows out of a commercial loan agreement. In January 2016 PSMP entered into an agreement with Bank SNB (which later merged with Simmons Bank) for a loan of up to $20 million for PSMP to construct an apartment complex at 417 N. Comanche Street in San Marcos, near the Texas State University campus. The borrower, PSMP, a limited partnership, still owns and operates the property. The debt was guaranteed in full by Skyline and Stephen M. Haug.

The Loan Agreement contained several mandatory provisions that are relevant to this appeal:

- Borrower (PSMP) would complete construction not later than July 31, 2017;

- Borrower would not permit any mechanics' liens to be asserted;

- Borrower would pay all real-estate taxes;

- Borrower would provide a replacement guarantor in case of a guarantor's death or dissolution.

Defendants do not dispute that PSMP failed to comply with these contractual provisions and that those defaults have not been cured.

The Loan Agreement also contained provisions detailing the definition and consequences of an "Event of Default" by PSMP:

- Any failure by the Borrower to make payment when due or to perform "any of the other covenants or conditions," if not promptly cured, would be an Event of Default;

- The occurrence of an Event of Default triggered certain contractual remedies, including permitting the lender to (1) withhold further disbursement of loan proceeds; (2) accelerate the loan and declare it immediately due and payable; and (3) collect "Default Interest" (i.e., interest at 3% above the contractual rate);

2

● "The Loan shall bear interest at the Default Rate at any time at which an Event of Default shall exist."

● In case of an Event of Default, Borrower would pay lender's attorney's fees "in connection with the enforcement of this Agreement."

Finally, the loan documents contained several provisions on the subject of waiver:

● The Loan Agreement provided that no waiver of any part of the Agreement would be valid unless in writing and signed by the party against whom waiver is sought;

● The Deed of Trust given as collateral for the loan provided that no waiver would be valid unless signed by both the lender and the borrower; that no waiver would be construed as a continuing waiver; and that no waiver would be implied from any delay or failure by the lender to take action on account of any default by PSMP.

As a result of PSMP's numerous undisputed Events of Default, starting as early as 2017, Simmons Bank withheld the final loan disbursement of $1.8 million in May 2018. Simmons Bank formally accelerated the loan on June 26, 2020. At that time, the loan had a principal balance of approximately $18.2 million. Notwithstanding the numerous Events of Default, however, Simmons Bank never charged or attempted to collect "default interest" from PSMP.

In 2019 PSMP began efforts to sell the property. In October 2020, PSMP located a potential buyer, Emet Municipal Real Estate Strategy II, LP ("EMRES"). A closing was scheduled for December 16. The purchase price for the property was to be $21 million.

In the meantime, on November 6, 2020, Simmons Bank sold the loan to 417 for approximately $16.2 million. Before PSMP's scheduled closing date of December 16 for the sale of the property to EMRES, 417 sent PSMP a formal payoff statement that included more than $1.6 million in "default interest," which, along with other sums, brought the total loan payoff number to more than $20 million. Shortly thereafter, and allegedly due to 417's inclusion of default interest in the payoff statement, EMRES's planned purchase of the property fell apart.

3

In their counterclaim, Defendants asserted that Simmons Bank and/or 417 had waived the lender's right to charge default interest and, as a result, 417's November 2020 payoff statement to PSMP was excessive and improper. Defendants filed a motion for summary judgment contending that 417's allegedly excessive payoff statement for the loan was the sole reason that the sale of the property to EMRES did not go through. If that sale had been completed, Defendants argued, 417 would have been paid in full. As a result, Defendants asserted that 417 was not entitled to recover damages from PSMP because any damages it had sustained were "its own fault." 417 filed its own motion for partial summary judgment in which it asserted that the undisputed summary judgment evidence showed that no waiver of default interest had occurred. The trial court granted Defendants' motion, declaring that the correct amount due from PSMP to 417 did not include any default interest. The court's order also dismissed all of 417's affirmative claims against Defendants.

## DISCUSSION

The appellate standards for reviewing summary judgments are well established and will not be repeated here. *See ACI Design Build Contractors Inc. v. Loadholt*, 605 S.W.3d 515, 517 (Tex. App.—Austin 2020, pet. denied) (citing, among others, *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)).

### *Summary judgment granted for Defendants*

Defendants nonsuited their claims for damages against 417, leaving only the following claims for declaratory relief at the time the trial court granted summary judgment in their favor: (1) Defendants do not owe 417 any interest for the time period prior to October 26, 2020; (2) Defendants do not owe 417 any interest for the time period after December 16, 2020; (3)

4

Defendants do not owe 417 any costs and expenses; (4) Defendants do not owe 417 any attorney's fees; and (5) the total amount Defendants owe to 417 on the loan is $18,336,303.95.

The central arguments underlying each of these claims are that (1) Simmons Bank and 417 waived the lender's right to charge default interest to PSMP; (2) the sole reason that the sale of the property from PSMP to EMRES in December 2020 did not close is because 417 improperly demanded default interest after it purchased the loan in November 2020; and (3) 417 would have been paid in full if the sale to ERMES had been completed. Thus, the dispositive issue in this appeal is whether Simmons Bank and 417 waived the lender's right to charge default interest to PSMP. That issue controls Defendants' claim number 5 above—whether the total amount they owe 417 on the loan is $18,336,303.95—which in turn controls their other claims for declaratory relief.

Waiver may be express or implied. *Wagner v. Texas Dep't of Sav. & Mortg. Lending*, No. 03-21-00389-CV, 2023 WL 402204, at *3 (Tex. App.—Austin Jan. 26, 2023, no pet.) (mem. op.). "Waiver—the 'intentional relinquishment of a known right'—can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015); *see also EWB-I, LLC v. PlazAmericas Mall Texas, LLC*, 527 S.W.3d 447, 466 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("Waiver is express when there is 'an intentional relinquishment of a known right,' and it is implied when there is 'intentional conduct inconsistent with claiming that right.'") (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003)).

In deciding whether a waiver has occurred, we must consider the contractual terms to which the parties agreed. In the present case, the original Loan Agreement provided that the "loan documents" included the Loan Agreement, Deed of Trust, and other documents entered in

connection with the transaction.  As stated above, those documents contain several "nonwaiver" provisions.  For example, the Loan Agreement contains a provision stating that "[n]o . . . waiver . . . of this Agreement or any other Loan Document shall be valid unless the same is in writing and signed by the party against which the enforcement of such . . . waiver . . . is sought."  The Deed of Trust contained an even broader nonwaiver provision: "The provisions hereof and the other Loan Documents may be . . . waived only by an instrument in writing signed by the Grantor and Beneficiary."  The Deed of Trust also contains a provision that "[e]ach waiver by Beneficiary must be in writing, and no waiver shall be construed as a continuing waiver.  No waiver shall be implied from any delay or failure by Beneficiary to take action on account of any default of Grantor."

In general, contractual nonwaiver provisions are binding and enforceable.  *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017).  The supreme court noted in *Shields* that "[w]e consider the force and effect of a nonwaiver provision in light of Texas's public policy that 'strongly favors freedom of contract,'" *id.*, and that "we have recognized 'a broad freedom of contract' and concluded parties can contractually waive certain substantive and procedural rights," *id.* at 482 (footnotes omitted).

As the supreme court held in *Shields*, even a nonwaiver provision itself can be waived, expressly or impliedly, *id.* at 482–83, although "there must, at a minimum, be some act inconsistent with its terms," *id.* at 474.  In the present case, however, Defendants do not argue that Simmons or 417 waived the contractual nonwaiver provisions themselves.  Rather, they argue that the loan documents do not actually contain true nonwaiver provisions at all, citing another provision of the loan documents stating that "[e]ach and every covenant and condition for the benefit of Lender contained in this Agreement may be waived by Lender."  We do not view this provision as inconsistent with the parties' nonwaiver provisions quoted above.

6

Defendants argue solely that Simmons Bank and 417 specifically waived the lender's right to charge default interest to PSMP. Importantly, Defendants have expressly disavowed reliance on *implied* waiver—i.e., waiver by conduct inconsistent with claiming the right—by the lenders. Accordingly, the dispositive issue is whether Simmons Bank or 417 clearly, expressly, and intentionally repudiated the right to charge PSMP default interest.

Defendants assert three actions by which Simmons Bank and 417 allegedly demonstrated—for different time periods—an express waiver of the lender's right to charge default interest: (1) up to October 26, 2020, based on actions by Simmons Bank; (2) up to November 6, 2020, based on different actions by Simmons Bank; and (3) after November 6, 2020, based on actions by 417. We will discuss these arguments in the foregoing order.

### (1) Was default interest waived up to October 26, 2020, by monthly loan statements Simmons Bank sent to PSMP?

From November 2017 through October 26, 2020, Simmons Bank delivered each month to PSMP a hard-copy "loan statement" showing the amounts then due. None were signed by a representative of Simmons Bank. After June 2018 the statements were titled "Notice of Loan Payment Due" and were in the following format:[1]

| Principal | Interest | Charges | Total | |
|---|---|---|---|---|
| 56,231,71 | 53,375.87 | 0.00 | 109,607.58 | Current Due |
| 0.00 | 0.00 | 0.00 | 0.00 | Past Due |
| 56,231.71 | 53,375.87 | 0.00 | 109,607.58 | Total Due |

---

[1] The numbers shown are from the October 2020 Notice. The notices that preceded June 2018 were in a slightly different format but contained the same information.

7

It is undisputed that the "Interest" reflected in these notices was "regular" interest, not "default" interest. Defendants argue that by these loan statements Simmons Bank expressly waived default interest from the date of PSMP's initial default up to October 26, 2020. We disagree.

As mentioned above, the parties' Loan Agreement provides that "[n]o . . . waiver . . . of this Agreement or any other Loan Document shall be valid unless the same is in writing and signed by the party against which the enforcement of such . . . waiver . . . is sought." The Deed of Trust, which defines PSMP as "Grantor" and Bank SNB (the predecessor to Simmons Bank) as "Beneficiary," provides that "[t]he provisions hereof and the other Loan documents may be . . . waived only by an instrument in writing signed by the Grantor and Beneficiary." The monthly loan statements sent from Simmons Bank to PSMP do not satisfy these requirements because they were not signed by either Simmons Bank or PSMP. Because Simmons Bank was entitled to rely on the foregoing contractual provisions, any documents that did not satisfy those requirements could not represent a clear repudiation of its right to charge default interest.

Relatedly, Defendants contend that Simmons Bank waived any right to charge default interest by a provision in the November 2020 Loan Sale Agreement by which Simmons Bank sold the loan to 417. In that agreement, Simmons Bank certified that in March 2020 PSMP had been required to pay an "adjusted loan payment" due to a system error but that "all other payments since then have been for the correct amount." Because the amounts paid by PSMP "since then"—i.e., between March and October 2020—did not include default interest, Defendants assert that Simmons Bank's certification that those payments were in the "correct amount" waived default interest up to October 26, 2020.

Again, however, although the Loan Sale Agreement was signed by Simmons and 417, it was not signed by PSMP, as required by the Deed of Trust. In addition, Simmons Bank's

8

statement pertained only to payments made by PSMP between March and October 2020 and so could not have resulted in a waiver of default interest chargeable at any earlier date.

Defendants argue that the Deed of Trust requirement for signatures of both PSMP and the lender is not applicable because that provision "addresses full-on amendments or waivers of 'provisions' of the loan documents" whereas "PSMP is claiming 417 LLC waived various *rights under* the Loan documents, not the *provisions of* the Loan documents themselves." (Emphasis in original.)

We reject this argument. The Loan Agreement provided that "[t]he loan shall bear interest at the Default Rate at any time at which an Event of Default shall exist." We conclude that this clause established a *right* for the lender to charge default interest and also constituted a *provision* of the agreement.

We hold that, as a matter of law, neither the monthly loan statements sent by Simmons Bank to PSMP nor Simmons Bank's statement in the Loan Sale Agreement that "all other payments since then have been for the correct amount" constituted a clear repudiation of the lender's right to charge default interest to PSMP and thus was not an express waiver of that right.

### *(2) Were default interest, attorney's fees, and collection expenses waived up to November 6, 2020, by a Loan Statement Certification that Simmons Bank made to 417 as part of the Loan Sale Agreement?*

In connection with its November 2020 sale of the loan to 417, Simmons Bank promised to deliver to 417 "an updated Loan Statement dated as of the Closing Date, certified by [Simmons Bank]." An appendix to the Loan Sale Agreement defined "Loan Statement" as "a statement of the principal balance, accrued interest (including any default interest), any late charges due and owing, escrow balances, and any other sums due and owing under the Loan . . . ."

9

Simmons Bank thereafter provided 417 with a "Loan Statement Certification" stating that "[Simmons Bank] hereby certifies that the information contained in the Pointe San Marcos Partners, L.P. account statement(s) to which this certification is attached is true and correct as of November 6, 2020." The account statement referenced in the Certification stated:

Simmons Bank
Pointe San Marcos Partners LP
Balance Owed Under Promissory Note As of 11.6.2020

| | |
|---|---|
| Principal | 18,244,064.60 |
| Interest | 21,290.21 |
| Total | 18,265,354.81 |

It is undisputed that the "Interest" referenced in this Certification included "regular" interest but not "default" interest. Defendants argue that this constituted an express waiver of the lender's right to charge and collect default interest. Again, we disagree.

Regardless of Simmons Bank's motive for omitting default interest from the Loan Statement Certification, that Certification was part of the Loan Sale Agreement between Simmons Bank and 417 and was given only to 417. PSMP was not a party to that agreement and did not sign it. As we have held above, PSMP is bound by its agreement in the original Deed of Trust that a provision of the loan documents could be waived "only by an instrument in writing signed by the Grantor [PSMP] and Beneficiary [Bank SNB, predecessor to Simmons Bank]." Because PSMP did not sign the Loan Sale Agreement, any statements in that document could not produce a clear repudiation of the lender's right to charge default interest to PSMP upon the occurrence of an event of default.

We hold that the Loan Statement Certification prepared by Simmons Bank for 417 in November 2020 did not, as a matter of law, constitute a clear repudiation of the lender's right to charge default interest to PSMP and thus was not an express waiver thereof.

***(3) Was default interest waived after November 6, 2020, by a "payoff statement" contained in a motion for partial summary judgment filed by 417 on January 29, 2021?***

The third event cited by Defendants as constituting an express waiver of 417's right to collect default interest (this time *after* November 6, 2020) is a statement contained in 417's January 29, 2021 First Motion for Partial Summary Judgment. That motion was filed in Dallas County, where 417's suit was originally filed. In the motion, which was never ruled on before the case was transferred to Travis County, 417 sought summary judgment as to unpaid principal, "regular" interest, costs, and attorney's fees but did not seek to recover "default" interest. Defendants argue that by failing to seek default interest in the motion, and by including as an exhibit to the motion a "payoff statement" that did not list default interest, 417 waived its right to such interest. Once again, we disagree.

Defendants focus this part of their waiver argument on an exhibit attached to an affidavit in support of 417's January 29, 2021 motion that listed an amount due for "interest" but none for "default interest":

**Balance Owed Under Promissory Note As of 1/29/2021:**

Interest                          $  170,277.94
Default Interest              $        -

Defendants argue that this statement in 417's motion for partial summary judgment constituted an express waiver of 417's right to charge default interest for the time period after it purchased the

loan. Other parts of 417's motion, however, plainly show that this exhibit was not a clear repudiation of 417's right to charge PSMP default interest.

First, a statement at the bottom of the page below the entries quoted above specified that receipt of the foregoing "payoff statement" would not waive the lender's right to collect default interest:

> Please be advised that if your loan has matured, or is otherwise in default, neither your receipt of this statement or acceptance of any past or future partial payment shall be deemed to amend or modify the terms of the loan documents, *nor cure or waive the default existing under the Loan or Lender's rights to enforce all remedies under the loan documents, including collection of default interest.* Furthermore, Lender reserves all of its rights and remedies under the loan documents, at law or in equity.

(Emphasis added.)

Second, the body of 417's January 29, 2021 motion for partial summary judgment contained a footnote expressly stating that 417 continued to maintain its entitlement to default interest even though it was not seeking default interest in that summary-judgment motion:

> The occurrence of an "Event of Default" is significant because it triggers certain contractual remedies including, but not limited to: (i) the right to withhold further disbursement of the proceeds of the Loan; (ii) to accelerate the Loan and declare it immediately due and payable; and (iii) *the right to collect interest at the Default Interest rate, i.e. 3% above the otherwise Applicable Rate.*[10]
>
> - - - - -
> [10] *Although Lender maintains that it is entitled to Default Interest under the Agreement, it does not seek such relief as part of its Motion for Summary Judgment.*

(Emphasis added.)

Third, 417's January 29, 2021 motion for partial summary judgment contained a similar disavowal of waiver in yet another footnote a few pages after the statements quoted above:

12

The categories of amounts currently due and owning [sic] under the Loan Documents include, but are not limited to,[13] the following:

➢ Interest . . . .
➢ Legal Fees . . . .
➢ Appraisal, Inspection, and Lien Release Fees . . . .

- - - - -

[13] As referenced above, although the Loan Agreements provide for it, this motion does not seek an award of Default Interest. *Lender's decision to not pursue Default Interest in this motion is not a waiver of its right to receive Default Interest under the Loan Documents.*

(Emphasis added.)

Finally, the affidavit to which the "payoff statement" was attached in 417's January 29, 2021 summary-judgment motion explained that the payoff statement had been created solely for purposes of that motion:

As of January 29, 2021, *Lender has updated its payoff statement (excluding Default Interest) for the purpose of this filing.* Attached hereto . . . is a true and correct copy of the January 29, 2021 Payoff Statement prepared by Lender, which reflects a total amount due and owing to Lender of $18,740,992.01.

(Emphasis added.)

We conclude that 417's failure to list default interest in the "payoff statement" attached to its January 29, 2021 motion for partial summary judgment did not, as a matter of law, constitute a clear repudiation of its right to charge default interest to PSMP and thus was not an express waiver thereof.

Because Defendants have not presented conclusive proof that Simmons Bank or 417 waived the right to charge default interest, the trial court erred in ruling as a matter of law that the "total amount" owed by PSMP to 417 is limited to $18,336,303.95. Accordingly, the court erred in granting summary judgment for Defendants on their counterclaim for declaratory judgment.

13

*Denial of 417's summary-judgment motion*

In addition to granting summary judgment in Defendants' favor as to their counterclaims and dismissing all of 417's claims, the trial court also denied 417's summary-judgment motion. 417's claims included (1) breach of contract and declaratory judgment against PSMP and the guarantors; (2) fraud by the deceased guarantor, Stephen M. Haug; (3) violation by PSMP of the Texas Assignment of Rents Act, Tex. Prop. Code §§ 64.001–.062; and (4) a request for attorney's fees and costs. As with Defendants' counterclaims, the central issue is waiver.

The trial court's judgment was based on its conclusion that 417 and/or Simmons Bank had waived the right to charge default interest and that the proposed sale of the property from Simmons Bank to EMRES in December 2020 would have closed but for 417's demand for default interest. Having held that the court's conclusion regarding default interest was erroneous, we hold that the court erred in denying 417's summary-judgment motion.

In its appeal, 417 not only challenges the trial court's granting of summary judgment on Defendants' claims for declaratory relief, it also challenges the trial court's denial of its own summary-judgment motion. With the exception of 417's claims for fraud and rents, the issues in both parties' summary judgment motions are the same.[2] Accordingly, we may consider

---

[2] We consider 417's Second Motion for Partial Summary Judgment, filed October 28, 2021, to be its live or operative summary-judgment motion. *See Fagan v. Aaron & Quirk, LLP*, No. 04-21-00302-CV, 2022 WL 2960222, at *2 (Tex. App.—San Antonio July 27, 2022, no pet.) (mem. op.) (holding that later-filed motion for summary judgment substituted for and supplanted earlier one). Because 417 did not seek summary judgment on its fraud and rents claims in that motion, we may not grant judgment for 417 on those claims in this appeal. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) ("When both parties move for partial summary judgment *on the same issues* and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered." (emphasis added)).

and decide 417's appeal from the denial of its own motion: "When . . . the parties file cross-motions for summary judgment and the trial court grants one and denies the other, we 'consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered.'" *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)).[3]

As with the challenge to the trial court's grant of Defendants' motion for summary judgment, 417's challenge to the trial court's denial of its own summary-judgment motion turns on the question of whether Simmons Bank and/or 417 waived the lender's right to charge default interest to PSMP. "While ordinarily a fact question, when the surrounding facts and circumstances are undisputed, waiver may be decided as a matter of law." *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 676–77 (Tex. 2020).

In the present case, the facts and circumstances relevant to the issue of express waiver are undisputed, revolving solely around written documents. Accordingly, we decide the waiver question as a matter of law. Based on and consistent with our discussion above, the undisputed evidence shows that Simmons Bank and 417 did not waive the lender's right to charge default interest to PSMP.

---

[3] The Final Judgment signed by the trial court did not specifically address 417's summary-judgment motion, although the granting of Defendants' motion constituted an implied denial of 417's motion. Nonetheless, to the extent the cross-motions for summary judgment raised the same legal issues, we may render the judgment that the trial court should have rendered on those issues. *See City of Dallas v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 271 n.4 (Tex. App.—Dallas 1994, no writ) (where cross-motions for summary judgment presented same issues, appellate court could render judgment trial court should have rendered even though summary-judgment order did not expressly deny cross-.summary-judgment motion).

Therefore, we hold that 417 is, as a matter of law, entitled to charge default interest to PSMP for all time periods during which an "event of default" existed. Correspondingly, the guarantors are likewise liable for those amounts. In addition, we hold that PSMP is obligated to pay all past-due regular interest from October 28, 2020, forward. Because 417 was legally entitled to charge default interest to PSMP, and because the undisputed evidence shows that PSMP has defaulted in several ways under the terms of the Loan Agreement, we hold that 417 is entitled to recover attorney's fees and costs from Defendants. The precise calculation of the foregoing amounts is best left to the trial court on remand.

## CONCLUSION

Having concluded that neither Simmons Bank nor 417 waived the lender's right to charge default interest to PSMP for any time period, we reverse the trial court's summary judgment in Defendants' favor. We render judgment that 417 is, as a matter of law, entitled to recover from Defendants default interest, as well as attorney's fees and collection costs as permitted by the terms of the loan documents and relevant statutes. We remand this cause to the trial court to calculate these amounts and to determine the remaining issues in the case.

_____

J. Woodfin Jones, Justice

Before Justices Triana, Smith, and Jones*

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: January 19, 2024

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

16