**Affirmed and Opinion filed May 17, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00449-CV

---

**THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellant**

**V.**

**CAROLYN CALLAS, RAY CALLAS, AND JAMIE CALLAS, INDIVIDUALLY AND AS THE REPRESENTATIVES OF THE ESTATE OF GERALD CALLAS AND FOR AND ON BEHALF OF ANY WRONGFUL DEATH BENEFICIARIES, Appellees**

---

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 14-CV-0927**

---

## O P I N I O N

The University of Texas Medical Branch at Galveston (UTMB) appeals the trial court's order denying its motion to dismiss the medical malpractice claim filed by appellees Carolyn Callas, Ray Callas, and Jamie Callas on the ground that appellees failed to serve timely an expert report and curriculum vitae as required by

section 74.351(a) of the Texas Civil Practice and Remedies Code. We hold the trial court did not abuse its discretion in denying UTMB's motion to dismiss because (1) under Rule 4, the deadline for serving the report was not a Saturday but the following Monday; (2) service by email was permissible under Rule 21a even though appellees elected to file the report electronically; and (3) the medical records served later were not an essential part of the report. *See* Tex. R. Civ. P. 4, 21a. We therefore overrule UTMB's sole issue and affirm the trial court's order.

## BACKGROUND

Appellees filed suit against UTMB, alleging that Dr. Gerald Callas's death resulted from the negligent placement of a feeding tube in his lung. UTMB filed its original answer on October 3, 2014. Under section 74.351(a) of the Civil Practice and Remedies Code, appellees were required to serve UTMB with an expert report and curriculum vitae within 120 days of UTMB's original answer. Tex. Civ. Prac. & Rem. Code § 74.351(a) (West Supp. 2015).[1] UTMB filed a

---

[1] To proceed with a health care liability claim, a claimant must comply with the expert report requirement of the Texas Medical Liability Act. *See Stockton v. Offenbach,* 336 S.W.3d 610, 614 (Tex. 2011). Section 74.351 includes the following provisions regarding service of the report and the consequences of failure to serve:

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

motion to dismiss, asserting that appellees failed to serve timely their expert report, which UTMB argued was due on January 31, 2015.

The record shows that appellees electronically transmitted the expert report[2] and medical records to the Galveston County District Clerk for filing on Saturday, January 31, 2015. Because the documents were transmitted on a Saturday, they are not listed on the docket as filed until Monday, February 2. *See* Tex. R. Civ. P. 21(f)(5)(A).[3]

The record does not show that those documents were served on UTMB electronically through the electronic filing manager. Instead, at 6:27 p.m. on Saturday, January 31, Darlene Lee, appellees' counsel's paralegal, attempted to serve the documents on UTMB's counsel in two emails. The first email contained four attached documents:

(1) Ray Callas, M.D.'s curriculum vitae and expert report, which included excerpts from relevant medical records;

(2) Gerald Callas's death certificate;

(3) Gerald Callas's radiology records; and

(4) Gerald Callas's UTMB billing records.

Lee received an email notification confirming successful delivery of the first email. On the following day, Sunday, February 1, UTMB's counsel saw that the email

Tex. Civ. Prac. & Rem. Code § 74.351(a)-(b).

[2] Because the expert report and curriculum vitae were filed with the Galveston County District Clerk and served on UTMB together, we sometimes refer to both documents collectively as the "expert report."

[3] UTMB argues that the January 31 filing was unsuccessful and that appellees had to refile on February 2. The record is not clear on this point. Whether the successful transmission to the clerk occurred on January 31 or February 2 is immaterial for two reasons: (1) the report was only required to be served on UTMB, not filed with the clerk; and (2) whether the report was successfully transmitted on January 31 or February 2, it was considered filed on February 2 under Rule 21(f)(5)(A).

3

had come in. In looking at the email on the morning of Tuesday, February 3, counsel noticed that the email stated it was "1 of 2 emails." After failing to locate the second email in his inbox, UTMB's counsel replied to Lee's email that morning, stating that the second email had not been received.

Later that morning, appellees' counsel responded that "the 2nd email actually got kicked back for size limits because it was the UTMB medical, which is about 1295 pages." The second email contained copies of UTMB's own medical records regarding Gerald Callas in an attachment. At 8:52 a.m. on Tuesday, February 3, appellees' counsel sent additional emails containing Callas's medical records in multiple attachments. After UTMB's counsel reviewed the additional attachments, he found that two sections of the attachments had not been sent (pages 359–499 and pages 649–749). Lee emailed UTMB's counsel those sections on Thursday, February 12.

At a hearing on UTMB's motion to dismiss, UTMB argued that appellees did not complete service of the expert report, if at all, until UTMB received the February 12 email. The trial court denied UTMB's motion to dismiss, and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9).

## ANALYSIS

The sole issue in this interlocutory appeal is whether the trial court abused its discretion when it denied UTMB's motion to dismiss appellees' health care liability claim. UTMB argues that section 74.351 of the Civil Practice and Remedies Code required the trial court to dismiss appellees' claim with prejudice due to untimely service of their expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

4

In general, we review for abuse of discretion a trial court's ruling on a motion to dismiss for failure to comply with section 74.351. *Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716, 718 (Tex. App—Houston [14th Dist.] 2011, no pet.). In this case, however, the facts summarized above are undisputed, and the adequacy of the expert report has not been challenged. Instead, the parties' dispute concerns a purely legal question: whether UTMB was timely served with the report in accordance with section 74.351(a) and the Texas Rules of Civil Procedure. Whether proper service has been made is a question of law we review de novo. *Id*. A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Thus, the trial court's failure to analyze or apply the law correctly is an abuse of discretion. *Id*.; *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We conclude the trial court did not abuse its discretion for the following reasons.

## I. Under Texas Rule of Civil Procedure 4, the 120-day deadline for service of appellees' expert report was Monday, February 2, 2015.

In order to decide whether appellees' service of the expert report was timely, we must first determine the service deadline. UTMB filed its answer on October 3, 2014. The parties disagree about whether Texas Rule of Civil Procedure 4 applies in computing section 74.351(a)'s 120-day service period. UTMB argues that the 120th day after filing was Saturday, January 31, 2015, while appellees argue it was Monday, February 2. Rule 4 provides in relevant part:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not a

Saturday, Sunday, or legal holiday. . . .

Tex. R. Civ. P. 4.

UTMB argues that applying Rule 4 to section 74.351 is improper because such application would contradict the statute's mandatory "strict compliance" standard. *See Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013) (stating that strict compliance with the service requirement of section 74.351(a) is mandatory to proceed with a health care liability claim). UTMB cites *Payne v. Payne*, in which this Court concluded that strict compliance means "literal compliance with the rules governing . . . service." No. 14-05-00738-CV, 2006 WL 2827365, at *1 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem. op.). UTMB argues that strict compliance with the 120-day deadline required appellees to serve their expert report literally 120 days after UTMB's answer was filed even though the 120th day fell on a weekend. UTMB also cites *Zanchi*, which held that there are only two circumstances in which the deadline can be extended: (1) by agreement of the parties, or (2) by court order pursuant to section 74.351(c) to allow the claimant to cure a deficient report. 408 S.W.3d at 376. Thus, according to UTMB, applying Rule 4 to this case would not only contravene the statute's strict compliance requirement, it would also create a third, impermissible method by which the 120-day deadline may be "extended."[4]

Appellees respond that Rule 4 does not extend the 120-day deadline, but simply provides the method by which the 120 days are calculated. We agree.

---

[4] UTMB also relies on *Kirkpatrick v. Hurst*, which held that Rule 4 could not be applied to extend a statutory limitations period that expired on a federal holiday. 484 S.W.2d 587, 589 (Tex. 1972). *Kirkpatrick* has been overruled, however. *See Danesh v. Houston Health Clubs, Inc.*, 859 S.W.2d 535, 536 (Tex. App.—Houston [1st Dist.] 1993, writ ref'd) ("*Kirkpatrick* is no longer good law. It has been overruled by statutes and by case law."); *see also Martinez v. Windsor Park Development Co.*, 833 S.W.2d 950, 951 (Tex. 1992) (implicitly overruling *Kirkpatrick* by reaching the opposite result).

6

Many courts, including the Supreme Court of Texas and this Court, have applied Rule 4 to calculate section 74.351(a)'s 120-day service deadline. *Badiga v. Lopez*, 274 S.W.3d 681, 682 (Tex. 2009) (stating that claimant was required to serve expert report by February 23, 2004—a Monday—in case where 120th day fell on Saturday); *Redwine v. Wright*, No. 14-10-00030-CV, 2010 WL 5238572, at *1 (Tex. App.—Houston [14th Dist.] Dec. 16, 2010, no pet.) (mem. op.); *Carpinteyro v. Gomez*, 403 S.W.3d 508 (Tex. App.—San Antonio 2013, pet. denied); *Christus Spohn Health Sys. Corp. v. Lopez*, No. 13-13-00165-CV, 2014 WL 3542094, at *4 (Tex. App.—Corpus Christi July 17, 2014, no pet.) (mem. op.) ("Thus, because the 120-day period ended on Saturday, Rule 4 allowed appellee to serve the expert report on the following Monday.").

In *Carpinteyro,* the defendant health care provider argued that the plaintiffs' expert report was untimely because the plaintiff failed to serve the expert report on "Saturday, June 9, 2012—literally the 120th day after the [plaintiffs'] health care liability claim was filed." 403 S.W.3d at 510. The San Antonio Court of Appeals held that although the plaintiff served the report the following Monday, June 11, 2012, the report had been timely served. *Id.* at 512. The court explained that because Chapter 74 does not provide a method for computing the end of the 120-day period, there is no conflict between chapter 74 and Rule 4. *Id.* at 511; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.002 (West 2011) ("In the event of a conflict between this chapter and another law, including a rule of procedure . . . , this chapter controls to the extent of the conflict."). Thus, Rule 4 provides the method for computing section 74.351(a)'s expert report deadline when the 120th day falls on a Saturday, Sunday, or legal holiday. *Id.* at 512; *see also Fulp v. Miller*, 286 S.W.3d 501, 510 (Tex. App.—Corpus Christi 2009, no pet.) (recognizing applicability of Rules of Civil Procedure to Chapter 74 health care liability claims).

We agree that Rule 4 does not conflict with section 74.351(a). We also hold that Rule 4's application does not contravene the requirement of strict compliance by creating an impermissible "extension" of the deadline, as UTMB argues. Instead, the trial court properly applied Rule 4 to calculate appellees' 120-day deadline.[5] *See Carpinteyro*, 403 S.W.3d at 512. Because the 120th day following the filing of UTMB's answer was Saturday, January 31, 2015, that day is not included in computing the end of the 120-day filing period. Instead, under Rule 4, the period ran until the end of the following Monday, February 2, 2015.[6]

## II. Appellants were not required to serve their report through the electronic filing manager.

Having determined that Monday, February 2, was the service deadline, we next consider whether appellees' expert report was served by that deadline. There is no dispute that the first email, which contained appellees' expert report and other documents, was transmitted by appellees' counsel and actually received by UTMB's counsel before Monday, February 2.[7] In addition, although the report is not required to be filed with the trial court, appellees did file it electronically by February 2. There is nothing in the record to indicate that the report was served on

---

[5] In contrast, Rule 5 provides that a court may extend a time period under the rules or permit filing after the expiration of such a period for good cause. *See* Tex. R. Civ. P. 5. This rule does not state that it applies to statutory time periods, and in any event we have held that an extension under Rule 5 would conflict with the statutory deadline. *Thomas v. Healthmark Partners, L.L.C.*, 93 S.W.3d 465, 468 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

[6] Because February 2 was the last day for service, we need not address UTMB's argument that appellees' email service after 5:00 p.m. on January 31 was untimely because the email was deemed served on February 2.

[7] Rule 21a(b) does not specify when service by email is complete. *See* Tex. R. Civ. P. 21a(b). UTMB relies on *Nexion Health*, which held that service by fax after 5:00 p.m. is deemed served the next day. 335 S.W.3d at 718 (citing Tex. R. Civ. P. 21a). *Nexion*'s holding is not on point because (1) appellees did not serve the expert report by fax, and (2) even if the fax timing rule applied to service by email, appellees' service would only be untimely if the email had been sent after 5:00 p.m. on February 2, rather than January 31.

appellees' counsel through the electronic filing manager, however.

UTMB argues that appellees' expert report had to be served through the electronic filing manager because appellees chose to file their expert report electronically with the trial court. Thus, UTMB contends that appellees' attempt to serve the report by email, even if timely completed, was not proper service, and the trial court erred in failing to dismiss appellees' cause of action. We disagree.

Section 74.351 provides that a health care liability claimant must "serve" the expert report within 120 days of filing suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The statute does not define "serve," but this Court and others interpreted the statute to incorporate the various methods of service found in Texas Rule of Civil Procedure 21a. *See Nexion Health*, 335 S.W.3d at 718; *Awoniyi v. McWilliams*, 261 S.W.3d 162, 165 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Univ. of Tex. Health Sci. Ctr. v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex. App.—Austin 2006, no pet.) ("[G]iven the applicability of the rules of civil procedure to health care liability claims and the use of 'serve' and 'served' in the statute, the legislature intended for claimants to comply with Texas Rule of Civil Procedure 21a to fulfill the requirements of section 74.351(a)."); *cf. Zanchi*, 408 S.W.3d at 380 & n.4 (holding that expert report need not be served under Tex. R. Civ. P. 106, but leaving open question whether report could be served in manner other than those authorized by Rule 21a).

Rule 21a(a) provides the acceptable methods of service for "every notice required by these rules, and every pleading, plea, motion, or other form of request required to be served under Rule 21." Tex. R. Civ. P. 21a(a). Later in part (a), the rule prescribes how a document must be served based on whether it is filed

9

electronically under Rule 21:

> (1) Documents Filed Electronically. A document filed electronically under Rule 21 must be served electronically through the electronic filing manager if the email address of the party or attorney to be served is on file with the electronic filing manager. If the email address of the party or attorney to be served is not on file with the electronic filing manager, the document may be served on that party or attorney under subparagraph (2).

> (2) Documents Not Filed Electronically. A document not filed electronically may be served in person, mail, by commercial delivery service, by fax, by email, or by such other manner as the court in its discretion may direct. *Id.*

There is no dispute that appellees filed the expert report electronically. Appellees were only required to serve the report through the electronic filing manager, however, if the report was "filed electronically *under Rule 21*"—that is, if the report was a "pleading, plea, motion, or other form of request required to be served under Rule 21." Tex. R. Civ. P. 21a(a)–21a(a)(1) (emphasis added).

Rule 21 provides that every "pleading, plea, motion, or application to the court for an order . . . must be filed with the clerk of the court . . . ." Tex. R. Civ. P. 21(a). An expert report does not fall within any of the categories of filings listed in Rule 21 because it does not state appellants' cause of action or request the court to make a specified ruling or order. *See* Tex. R. Civ. P. 45 (listing requirements of pleadings); *see also* Black's Law Dictionary 1168 (10th ed. 2014) (defining motion as "[a] written or oral application requesting a court to make a specified ruling or order"); *Loaisiga v. Cerda*, 379 S.W.3d 248, 261 (Tex. 2012) (distinguishing expert report from pleadings to which report relates). Thus, Rule 21 does not require the expert report to be filed with the court. Likewise, section 74.351 only requires service of the expert report; nothing in the statute requires the claimant to file the document with the court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.

10

Because neither Rule 21 nor section 74.351 require a health care liability claimant to file the expert report with the court, we conclude that the document was not "filed electronically under Rule 21." Accordingly, Rule 21a(a)(1) did not require the report to be "served electronically through the electronic filing manager."

Consistent with our precedent, we look to the remainder of Rule 21a to determine whether appellees used any of the various service methods included in the rule. *Nexion Health*, 335 S.W.3d at 718; *Awoniyi*, 261 S.W.3d at 165. Because Rule 21a(a)(2) provides for service by email, we hold appellees used a permissible method of service.[8]

## III. Service was timely because the first email contained the required elements of an expert report.

UTMB's final argument on appeal is that service was not completed, if at all, until it received the medical records attached to the February 12 email. Although UTMB disclaims any challenge to the sufficiency of the expert report, it argues that the copies of its own medical records that appellees attached to the February 3 and February 12 emails were an essential part of the report. Because UTMB did not receive those copies from appellees until February 12, it contends service was untimely.

To determine whether service of the expert report was timely, we must

---

[8] This Court has also held that service may be effective if the claimant accomplishes actual, timely delivery despite using the incorrect method when the opposing party is unable to show harm. *See Netherland v. Wittner*, 662 S.W.2d 786, 787 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e) (holding appellee fulfilled the "primary purpose of Rule 21a," and thus, sufficiently complied with it); *see also Spiegel v. Strother*, 262 S.W.3d 481, 483–84 (Tex. App.—Beaumont 2008, no pet.) ("When attempted service pursuant to Rule 21a achieves actual timely delivery to the proper party in a manner that accomplishes the objective of the rule, and no harm is shown, courts have found adequate service."). Thus, had email service not been permissible in this case, appellees' service would still have been effective because the expert report was delivered and received prior to the February 2 deadline and UTMB has shown no harm.

11

address whether the documents attached to the first email, which was sent and received prior to the February 2 deadline, constitute the entire report notwithstanding the later transmission of medical records. We conclude that the first email's attachments included all of the required elements of an expert report.

Appellees' first email contained the expert report and curriculum vitae as well as Gerald Callas's death certificate, radiology records, and UTMB billing records. Section 74.351 requires service of "one or more expert reports, with a curriculum vitae of each expert listed in the report." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The section also defines an "expert report" as a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id*. § 74.351(r)(6). We look only within the four corners of the document to determine whether the report satisfies section 74.351. *Am. Transitional Care Ctrs. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

The expert report sent in the first email contains the required information listed in the statute's definition. *See* Tex. Civ. Prac. & Rem Code Ann. 74.351(r)(6). The report, written by Ray Callas, M.D., provides a nine-page summary of his opinions regarding the standard of care for the use of the feeding tube, the manner in which the feeding tube was incorrectly placed, and the causal relationship between the tube's misplacement by UTMB employees and the resulting injuries that appellees claim. Appellees' report therefore meets the definition of expert report in section 74.351(r)(6).

UTMB also argued at the hearing that the report referenced the medical

records and therefore UTMB was unable to understand the report without the complete records. UTMB's argument is unpersuasive for two reasons. First, medical records are not expert reports.[9] Second, all portions of the medical records that the expert identified as pertinent to his opinion were either reproduced or cited and described within the report itself.

Limiting our review to the four corners of the report, we hold it is self-contained and sufficiently fulfills the purpose of an expert report. *See Palacios,* 46 S.W.3d at 879 (explaining that an expert report must include information sufficient to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit). Although the report must contain an expert opinion on the elements of standard of care, breach, and causation, the plaintiff need not present evidence in the report as if it were actually litigating the merits. *Id*. Appellees therefore were not required to serve the medical records in order to comply with section 74.351(r)(6) or *Palacios*.

We hold that appellees timely served their complete expert report through the first email, which was sent and received prior to February 2. The trial court did not abuse its discretion when it denied UTMB's motion to dismiss.

## CONCLUSION

Appellees were not required to serve UTMB with copies of its medical records or file the expert report with the court to satisfy section 74.351, yet they did so based on what they described as an "abundance of caution." To hold that the trial court abused its discretion in denying UTMB's motion to dismiss would

---

[9] *Maxwell v. Seifert*, 237 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2007, pet. struck). Unlike medical records, an expert report is not admissible and shall not be used in a deposition, trial, or other proceeding unless the claimant uses it for any purpose other than to fulfill the service requirement. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(k), (t).

require us to rewrite section 74.351 to add requirements that the statute does not contain. For the reasons stated above, we conclude appellees served the entire required expert report on UTMB in a timely and permissible manner. We therefore overrule UTMB's sole issue on appeal and affirm the trial court's order denying UTMB's motion to dismiss.

/s/    J. Brett Busby
        Justice

Panel consists of Justices Boyce, Busby, and Brown.