**Reversed and Remanded and Memorandum Opinion filed October 31, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00314-CV

---

## THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellant

## V.

## FRANCIS DURISSEAU, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF MICHAEL DURISSEAU, DECEASED, Appellee

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 17-CV-0004**

---

## M E M O R A N D U M   O P I N I O N

Appellant The University of Texas Medical Branch at Galveston ("UTMB") appeals the trial court's denial of its motion to dismiss appellee Francis Durisseau's health care liability suit. For the reasons below, we reverse the trial court's order denying the motion to dismiss and remand for further proceedings.

## BACKGROUND

Durisseau sued Dr. Daniel Beckles and asserted health care liability claims arising from the death of her husband following coronary bypass surgery. Dr. Beckles filed a motion to dismiss, arguing he was immune from Durisseau's claims because he was employed by UTMB, a governmental unit. Before the trial court ruled on Dr. Beckles' motion, Durisseau filed an amended petition eliminating her claims against Dr. Beckles and asserting claims only against UTMB.

UTMB filed its original answer to Durisseau's amended petition on August 11, 2017. Based on this filing, the parties agree that Durisseau had until December 11, 2017 to serve UTMB with the expert report required by section 74.351 of the Texas Medical Liability Act ("TMLA"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 2017) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party . . . one or more expert reports."). On October 6, 2017, Durisseau filed a "Notice of Filing of Expert Report" that included a certificate of service attesting the expert report was served on all counsel of record.

UTMB filed a motion to dismiss on December 15, 2017, asserting Durisseau failed to serve an expert report by December 11, 2017 as required by section 74.351. Durisseau filed a response arguing (1) the notice of filing's certificate of service showed Durisseau "attempted to serve" UTMB via fax; and (2) UTMB was "aware" and implicitly acknowledged service of the expert report. UTMB filed a reply to Durisseau's arguments. The parties did not attach any evidence to their filings.

The trial court held a hearing on UTMB's motion to dismiss in February 2018. No testimony or other evidence was introduced at the hearing. After argument, the trial court took the motion under advisement.

2

The same day as the motion hearing, UTMB filed an affidavit from assistant attorney general Jason Warner, counsel for UTMB. Warner's affidavit stated he did not receive Durisseau's expert report. Attached to Warner's affidavit was a fax log showing he did not receive a fax from Durisseau or her attorneys. The day after the motion hearing, UTMB filed a supplemental reply to Durisseau's response to the motion to dismiss. Warner's affidavit also was attached to the supplemental reply.

Durisseau filed a motion to strike UTMB's supplemental reply and objected to Warner's affidavit. Asserting that a motion to dismiss under the TMLA is equivalent to a motion for summary judgment, Durisseau argued UTMB should not be permitted to supplement the evidentiary record. UTMB filed a response to Durisseau's motion and objections.

On April 3, 2018, the trial court signed an order denying UTMB's motion to dismiss. The trial court did not rule on Durisseau's motion to strike and objections to Warner's affidavit. UTMB filed an interlocutory appeal.

ANALYSIS

In a single issue, UTMB argues the trial court erred by denying its motion to dismiss because Durisseau failed to properly serve her expert report within the 120-day deadline provided by section 74.351. UTMB asserts (1) the filing's certificate of service did not create a presumption of proper service, and (2) even if the certificate created a presumption of service, the evidence conclusively rebutted that presumption.

## I.      Standard of Review and Governing Law

We review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46

3

S.W.3d 873, 875 (Tex. 2001); *Univ. of Tex. Health Sci. Ctr. at Houston v. Joplin*, 525 S.W.3d 772, 776 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). We defer to the trial court's factual determinations if they are supported by the record and review *de novo* questions of law involving statutory interpretation. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011); *Joplin*, 525 S.W.3d at 776. The trial court abuses its discretion if it acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Rivenes v. Holden*, 257 S.W.3d 332, 336 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Because the trial court did not file findings of fact or conclusions of law, we uphold the trial court's ruling on any theory supported by the record and imply any findings of fact necessary to support its ruling. *Houston Methodist Hosp. v. Nguyen*, 470 S.W.3d 127, 129 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

"To proceed with a health care liability claim, a claimant must comply with the expert report requirement of the Texas Medical Liability Act." *Univ. of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 61 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In relevant part, section 74.351 states:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Section 74.351's expert-report requirement is intended to inform the served party of the conduct called into question and to provide a basis for the trial court to conclude the plaintiff's claims have merit. *Hebner v. Reddy*, 498 S.W.3d 37, 41 (Tex. 2016); *Gardner v. U.S.*

4

*Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008) (per curiam).

If the claimant does not serve an expert report within section 74.351's 120-day deadline, the statute (upon a motion from the affected physician or health care provider) requires dismissal of the claim with prejudice. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *see also Joplin*, 525 S.W.3d at 778. The Supreme Court has instructed that "strict compliance" with this provision is mandatory. *Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013); *see also Joplin*, 525 S.W.3d at 778 and *Callas*, 497 S.W.3d at 63.

While Section 74.351 does not define "serve", this court and others have interpreted it to incorporate the service rules in Texas Rule of Civil Procedure 21a. *See Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716, 718 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Awoniyi v. McWilliams*, 261 S.W.3d 162, 164-65 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Rule 21a provides service may be completed (1) through the electronic filing manager, or (2) in person or by mail, commercial delivery service, fax, email, or such other manner as the court in its discretion may direct. Tex. R. Civ. P. 21a(a); *see also Callas*, 497 S.W.3d at 65.

## II. The Certificate of Service Included with Durisseau's "Notice of Filing of Expert Report" Gave Rise to a Presumption of Proper Service.

Durisseau included with her "Notice of Filing of Expert Report" a certificate of service stating that on October 6, 2017, the expert report was served on all counsel of record electronically and via fax. In the trial court and on appeal, Durisseau argues the certificate of service gives rise to a presumption that service on UTMB was properly effected via fax. Durisseau stated that service was not completed electronically "due to [UTMB's] failure to include its contact on the eServe list."

Challenging this assertion, UTMB points out that the certificate of service attributes two different fax numbers to UTMB's counsel and argues it creates, "at best, an ambiguity as to where the fax was actually transmitted." In relevant part, the certificate of service shows as follows:

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of this instrument has been duly served on all counsel of record in compliance with Tex. R. Civ. P. 21a on this the 6 day of October, 2017, as set forth below:

DEANS & LYONS, LLP                                   *Via Facsimile (832) 380-2747;*
MATT MCCRACKEN                                      *and/or Electronic Service*
mmccracken@deanslyons.com
BENJAMIN C. FEILER
bfeiler@deanslyons.com
1001 Fannin, Suite 1925
Houston, Texas 77002


KEN PAXTON                                          *Via Facsimile (832) 380-2747;*
Attorney General of Texas                           *and/or Electronic Service*
JASON WARNER
JEFFREY C. MATEER
First Assistant Attorney General
BRANTLEY STARR
Deputy First Assistant Attorney General
JAMES E. DAVIS
Deputy Attorney General for Civil Litigation
KARA KENNEDY
Chief, Tort Litigation Division
Assistant Attorney General
State Bar No. 24028112
Tort Litigation Division, MC-030
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197

FAX: (512) 457-4430
Jason.warner@oag.texas.gov

Because the certificate states it was served "[v]ia facsimile (832) 380-2747," UTMB argues "it is obvious" the faxed documents were sent only to that number instead of to UTMB's counsel's correct fax number, (512) 457-4430.

A certificate of service by an attorney of record is prima facie evidence of the fact of service and creates a rebuttable presumption of receipt. *See* Tex. R. Civ. P. 21a(e); *see also Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) and *Mayfield v. Fullhart*, 444 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The certificate of service need not specify the method of service used. *Approximately $14,980.00 v. State*, 261 S.W.3d 182, 187 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Although it did not mention the method of service, Rule 21a does not require that a certificate of service detail the method of service used."); *see also Brown v. Ogbolu*, 331 S.W.3d 530, 534-35 (Tex. App.—Dallas 2011, no pet.).

Analyzing UTMB's challenge to Durisseau's certificate of service, we are guided by *McQuade v. Berry*, No. 02-12-00099-CV, 2012 WL 6049012 (Tex. App.—Fort Worth Dec. 6, 2012, no pet.) (mem. op.). In *McQuade*, the defendant filed a motion to dismiss asserting the plaintiff failed to comply with section 74.351's requirement regarding the 120-day deadline for service of an expert report. *Id*. at *2-3. The plaintiff's expert report was due by November 22, 2011 and her certificate of service was dated that same day. *Id*. at *1, *3. But the report's certified mail envelope was postmarked November 23, 2011 which, the defendant argued, overcame the prima facie presumption created by the certificate of service. *Id*. at *3.

Citing our opinion in *Approximately $14,980.00*, the court noted that Rule

7

21a does not require a certificate of service to specify the method of service. *Id.* at *3. The court therefore concluded that "the legally incorrect but superfluous statement in [the plaintiff's] certificate of service about the date of one of the two attempted methods of service does not negate the prima facie presumption, created by the certificate, of proper service by certified mail on November 22." *Id.*

Similarly, the statement in Durisseau's certificate of service regarding the method of service was not required by Rule 21a. We decline to conclude that this superfluous statement negates the presumption of service created by the certificate. *See McQuade*, 2012 WL 6049012, at *3; *see also Approximately $14,980.00,* 261 S.W.3d at 187. The certificate of service is prima facie evidence of the fact of service and created a rebuttable presumption of receipt. *See* Tex. R. Civ. P. 21a(e).

### III.     UTMB's Evidence Conclusively Rebutted the Presumption of Service.

UTMB argues this presumption was rebutted by conclusive evidence of non-receipt. UTMB supports its argument with reference to Warner's affidavit and the attached fax log, which were filed with the trial court after the conclusion of the hearing on UTMB's motion to dismiss. Warner's affidavit stated he did not receive Durisseau's expert report and the fax log shows he did not receive a fax from Durisseau or her attorneys.

Durisseau did not file any evidence with respect to the proper service inquiry, either before or after the hearing on the motion to dismiss. At the hearing, Durisseau's counsel stated "the only evidence before the Court is the prima facia evidence of the certificate of service."

The presumption of proper service created by a certificate of service may be rebutted with proof of non-receipt. *In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009); *Approximately $14,980.00*, 261 S.W.3d at 189-90. Evidence sufficient to overcome the presumption of service includes an affidavit from counsel averring

8

that he never received the document in question. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam); *see also Smith v. Guardian Life Ins. Co.*, No. 14-99-00298-CV, 2001 WL 893760, at *4 (Tex. App.—Houston [14th Dist.] Aug. 9, 2001, no pet.) (not designated for publication) (reversing summary judgment where the non-movant's affidavit stating he never received service rebutted presumption of service created by certificate). When evidence of non-receipt is produced, the presumption of service "'vanishes'" and cannot be considered as evidence of service. *See Wembley Inv. Co.*, 11 S.W.3d at 927 (quoting *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987)).

After the hearing, UTMB filed Warner's affidavit stating he did not receive any document from Durisseau or her attorneys regarding an expert report. Attached to Warner's affidavit was a fax log showing faxes received from August 2017 through February 2018; the log does not show a fax received from Durisseau or her attorneys. This evidence effectively rebuts the presumption of service created by Durisseau's certificate of service. *See In re E.A.*, 287 S.W.3d at 5; *see also Wembley Inv. Co.*, 11 S.W.3d at 927; *Approximately $14,980.00*, 261 S.W.3d at 189-90; and *Smith*, 2001 WL 893760, at *4. Durisseau did not introduce any other evidence showing UTMB's counsel received the documents in question and did not raise an issue of fact regarding receipt of service. *See, e.g., Unifund CCR Partners*, 262 S.W.3d at 798 (no fact issue where attorney's affidavit attesting to non-service rebutted the presumption created by the certificate of service).

Because the only evidence before the trial court conclusively established non-service of the expert report, the record does not support the trial court's implied finding that UTMB received the expert report by the deadline. The trial court's denial of UTMB's motion to dismiss therefore constitutes an abuse of discretion.

Contending our evidentiary review should not consider UTMB's evidence filed after the hearing, Durisseau reasserts the issues raised in her motion to strike. But the record does not show Durisseau obtained a ruling on her motion. As a prerequisite to presenting an evidentiary complaint for appellate review, the complaining party must object to the evidence and obtain a ruling. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam); *Alaniz v. Rebello Food & Beverage, L.L.C.*, 165 S.W.3d 7, 19 n.19 (Tex. App.—Houston [14th Dist.] 2005, no pet.). To the extent Durisseau asserts UTMB's evidence is outside the scope of our review, we conclude she failed to preserve these arguments because she did not obtain a ruling on her motion to strike or object to the trial court's failure to rule on it. *See Cal Dive Offshore Contractors Inc. v. Bryant*, 478 S.W.3d 914, 921 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (appellant's failure to obtain a ruling on motion to strike did not preserve his arguments for appellate review).

Setting aside the issue of error preservation, Durisseau does not cite any cases or other authority to support her contention that the parties were prohibited from filing supplemental briefs or evidence "as of the moment the [motion to dismiss] hearing concluded." Durisseau analogizes this situation to the rules governing summary judgment procedure, which require the trial court to affirmatively indicate on the record that it has accepted or considered late-filed summary judgment evidence. *See* Tex. R. Civ. P. 166a(c); and *Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 14-15 (Tex. App.—Houston [14th Dist.] 2010, no pet.). But neither the Texas Rules of Civil Procedure nor the TMLA impose similar requirements with respect to motions to dismiss for failure to comply with section 74.351. Likewise, the trial court's local rules do not impose any limitations regarding evidence filed after a hearing on a

motion to dismiss. Without any statutory or other support, we decline to impose those limitations here.

UTMB's evidence rebutted the presumption of service and, as the only evidence on this issue, conclusively established non-service of the expert report. Because Durisseau did not comply with section 74.351's requirements, the trial court erred by denying UTMB's motion to dismiss.

## IV.      UTMB Did Not Acknowledge Actual Receipt of the Expert Report.

Finally, Durisseau asserts UTMB's "acknowledged, actual receipt" of the expert report evidences her compliance with section 74.351. Durisseau's argument relies on two statements from UTMB's counsel:

1.      At the hearing on UTMB's motion to dismiss, UTMB's counsel stated, "what [Durisseau's attorneys] sent over in October was — the transmission went to an 8-3-2 area code. It didn't go to 5-1-2."

2.      UTMB's counsel's November 6, 2017 vacation letter filed with the trial court requested the court "not set any hearings, trial, forward any discovery which requires a response, or other matters" during certain dates in December and January.

Section 74.351 requires strict compliance. *See Zanchi*, 408 S.W.3d at 376. The cases Durisseau cites to support her "acknowledged, actual receipt" argument are distinguishable from the facts presented here. *See Goforth v. Bradshaw*, 296 S.W.3d 849, 851 (Tex. App.—Texarkana 2009, no pet.); *Spiegel v. Strother*, 262 S.W.3d 481, 482-83 (Tex. App.—Beaumont 2008, no pet.); and *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Ripley*, 230 S.W.3d 419, 421 (Tex. App.—San Antonio 2007, no pet.). In all of these cases, it was undisputed that the defendant health care providers received the plaintiffs' expert reports before the 120-day deadline elapsed — the providers' challenges instead addressed more nuanced components of section 74.351. *See Goforth*, 296 S.W.3d at 851 (undisputed that

health care providers received expert report within deadline; providers challenged report's service through regular mail rather than registered or certified mail); *Spiegel*, 262 S.W.3d at 482-83 (provider's attorney "acknowledged he and [the provider] received the report within 120 days" and instead challenged the claimant's use of a private process server who left report with the provider's staff); and *Ripley*, 230 S.W.3d at 421 ("undisputed that [the provider] served with a copy of [the claimants'] expert report" and the provider challenged the claimant's service while claim was pending in federal court).

Here, unlike the acknowledgements in *Goforth*, *Spiegel*, and *Ripley*, neither UTMB nor its counsel acknowledged receiving Durisseau's expert report. The statements Durisseau points to do not indicate UTMB received the expert report. In the trial court and on appeal, UTMB consistently has asserted that it did not receive the expert report. We therefore reject Durisseau's argument that UTMB acknowledged receipt of the expert report.

## CONCLUSION

We reverse the trial court's order denying UTMB's motion to dismiss and remand for proceedings consistent with this opinion.

/s/    Meagan Hassan
        Justice

Panel consists of Justices Christopher, Jewell, and Hassan.