**Reversed and Remanded and Memorandum Opinion filed April 16, 2024**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00911-CV

---

## MICHAEL TODD KOSAR, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR FOR THE ESTATE OF BETTY KOSAR, DECEASED; CRISANTOS G. LOPEZ; GENEVIEVE R. LOPEZ; AND SEBASTIAN RODRIGUEZ, Appellants

### V.

## KPA-CONSOLIDATION, D/B/A KINGWOOD MEDICAL CENTER, Appellee

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2017-48084-A**

---

### MEMORANDUM OPINION

Appellants Michael Todd Kosar, Individually as Independent Administrator for the Estate of Betty Kosar, Deceased; Crisantos G. Lopez; Genevieve R. Lopez; and Rafael Sebastian Rodriguez, appeal from the trial court's order dismissing their claims against appellee KPH-Consolidation, Inc. d/b/a Kingwood Medical

Center (Kingwood) pursuant to section 74.351 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 74.351. We hold that the trial court abused its discretion when it granted Kingwood's motion to dismiss because appellants' expert report states with sufficient detail the causal relationship between the alleged failure to meet the standard of care and the alleged harm resulting in Betty Kosar's injuries and death. We therefore sustain appellants' second issue, reverse the trial court's final judgment, and remand the case to the trial court for further proceedings.[1]

## BACKGROUND

We have seen this dispute before. *See Kosar v. KPH-Consolidation, Inc. d/b/a Kingwood Medical Center*, No. 14-19-00401-CV, 2020 WL 7074223, at *1 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, no pet.) (mem. op.) (dismissing appeal for lack of jurisdiction). Our prior opinion sets forth the pertinent background information and we do not repeat it here. After the case was remanded to the trial court, appellants' claims against Kingwood were severed into a separate case and a final judgment was signed soon thereafter. This appeal followed.

## ANALYSIS

Appellants argue, among other issues, that the trial court abused its discretion when it dismissed their case against Kingwood because Dr. Bedolla's April 4, 2018 expert report (First Report) met the Chapter 74 expert report requirements. As explained below, we agree.

### I. Standard of review and applicable law

We review for an abuse of discretion a trial court's ruling on a motion to

---

[1] Appellants raised four issues on appeal. Because we sustain appellants' second issue, we need not reach their remaining issues challenging the trial court's final judgment. *See* Tex. R. App. P. 47.1.

dismiss for failure to comply with section 74.351. *Am. Transitional Care Cntrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Univ. of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 62 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

The Texas Medical Liability Act requires a party asserting a healthcare liability claim to file an expert report and serve it on each party not later than 120 days after each defendant files an answer. Tex. Civ. Prac. & Rem. Code § 74.351(a). Under the statute, an expert report means a written report that provides "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Abshire v. Christus Health Se. Texas*, 563 S.W.3d 219, 223 (Tex, 2018). If a plaintiff does not timely serve an expert report meeting the required elements, the trial court must dismiss the healthcare claim on motion of the affected healthcare provider. *See* Tex. Civ. Prac. & Rem. Code. §§ 74.351(b), (l); *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam); *Gannon v. Wyche*, 321 S.W.3d 881, 885 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). If elements of the report are found deficient, as opposed to absent, the court may grant a thirty-day extension to cure the deficiency. Tex. Civ. Prac. & Rem. Code § 74.351(c); *Gannon*, 321 S.W.3d at 885.

"The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby v. Santillan*, 346

S.W.3d 546, 554 (Tex. 2011). The medical expert's report need not marshal all the plaintiff's proof, nor prove the plaintiff's claim. *Columbia Valley Healthcare Sys. L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). It must, however, include the expert's opinions on the three statutory elements of standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 878-79; *Kelly v. Rendon*, 255 S.W.3d 665, 672 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The report need not use "magic words" and does not have to meet the same standards as evidence offered in a summary-judgment proceeding or trial. *See Zamarripa*, 526 S.W.3d at 460 (stating that a medical expert need not use "any particular magical word"); *Jelinek v. Casas*, 328 S.W.3d 526, 540 (Tex. 2010) (stating no magic words are required). Bare conclusions or speculation, however, will not suffice. *See Wright*, 79 S.W.3d at 52, 53; *Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 23 (Tex. App.— Houston [14th Dist.] 2017, pet. denied).

To constitute a good-faith effort to comply with the expert report requirement, the report must provide enough information to fulfill two purposes of the statute: (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). This constitutes a low threshold that a person bringing a claim against a health care provider must cross to show that his or her claim has merit. *North Cypress Med. Ctr. Operating Co., Ltd. v. White*, No. 14-20-00004-CV, 2022 WL 120706, at *3 (Tex. App.— Houston [14th Dist.] Jan. 13, 2022, no pet.) (mem. op.); *see Loaisiga v. Cerda*, 379 S.W.3d 248, 264 (Tex. 2012) (Hecht, J. concurring in part and dissenting in part) ("We have held that the standard for adequacy of a report is lenient, and that leave to cure any deficiencies in a report must be freely given."). "Whether the expert's explanations are believable is not relevant to the analysis of whether the expert's

opinion constitutes a *good-faith effort* to comply with the Act." *E.D. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660,664 (Tex. 2022) (per curiam) (emphasis in original, internal quotations omitted).

## II.    Dr. Bedolla's First Report meets the section 74.351 requirements.

Among other arguments raised on appeal, appellants assert that the trial court abused its discretion when it dismissed their claims against Kingwood for an inadequate expert report because Dr. Bedolla's First Report crossed the low threshold to show that appellants' claims have merit.

In his First Report and attached C.V. Dr. Bedolla summarized his qualifications to render his expert opinion on Kingwood's handling of Kosar.[2] Kingwood did not challenge those qualifications, so they are not at issue in this appeal.

Dr. Bedolla next detailed Kingwood's handling of Kosar based on the medical records he reviewed.  According to Dr. Bedolla, Kosar arrived at Kingwood complaining about abdominal pain and fever at 11:49 a.m., ten days after gastric-sleeve surgery.  The hospital's records indicate that Kosar was pale, sweating heavily, and had abnormal breathing.  Kosar's pulse rate was 152, well above the normal pulse rate.  Dr. Becker, the Emergency Room physician, saw Kosar minutes after her arrival and he noted that Kosar had diffuse tenderness of her abdomen to palpitation.  Laboratory testing showed that Kosar had elevated lactate levels, elevated glucose with no previous history of diabetes, and diffuse elevation of liver function tests.  A chest X-ray was taken, and it revealed Kosar had a large amount of air in her abdominal cavity, "a very abnormal finding ten days out for abdominal surgery."  CT Imaging "was markedly abnormal with air

---

[2] References to "Kosar" are to the deceased.

and fluid strongly suggestive of bowel perforation and intrabdominal abscess."

The on-call surgeon was called in and examined Kosar. The surgeon recommended Kosar be transferred. The surgeon then consulted with Dr. Mehta, the original surgeon, who accepted the transfer to Memorial Hermann Hospital. The consult note states that Kosar was diagnosed with a perforated bowel. Dr. Bedolla states that the "consult note does not mention sepsis." The transfer was arranged and at 2:14 p.m., Dr. Becker's documentation gives the diagnoses of "abdominal pain" and "gastric perforation." Kosar received broad spectrum antibiotics and about four liters of IV fluids. Pressors were not administered.

Kosar then remained in the Kingwood Emergency Room for three hours after the transfer had been accepted. There are no records indicating that Dr. Becker checked Kosar's condition during this period of time. The "RN Notes" indicate that Kosar's condition deteriorated during this period. The RN Notes document that Kosar developed hypotension and a pulse rate of 148. When Dr. Becker was notified by phone of Kosar's hypotension, he declined to give Kosar pain medication due to her low blood pressure. Kingwood's records state that Kosar left Kingwood at 5:26 p.m. in an ambulance.

Kosar's condition became critical during the ambulance transfer as she experienced an elevated heart rate and low blood pressure. Kosar experienced cardiac arrest during the transfer but the paramedics were able to resuscitate her prior to her arrival at Memorial Hermann Hospital. Kosar received surgery at Memorial Hermann where three liters of pus were drained and massive sepsis was discovered. Kosar later died due to sepsis and multi-organ failure.

Dr. Bedolla summarized Kingwood's treatment of Kosar as follows:

[Kosar] came in 10 days after abdominal surgery, with a post op leak, a massive amount of pus in her abdomen, and multiple markers for

6

sepsis.  The surgeon at Kingwood Hospital recommended transfer to Memorial Hermann, and the transfer took over 3 hours to start from the time the decision was made.  During this time, she was not rechecked by Dr. Becker and about 26 minutes before transfer, she became hypotensive, indicating deterioration to full-blown septic shock.  She was not treated properly for septic shock.  She was transferred in septic shock and had a cardiac arrest en route.  Though she was resuscitated, she ultimately died from sepsis and multi-organ failure.

Dr. Bedolla's expert report then detailed the required parts of a Chapter 74 medical expert report:

### VII.    The Standard of Care for Kingwood Hospital

A.    A hospital must provide treatment to emergency patients within its capacity to minimize the patient's risks.

B.    When the hospital is going to transfer out, it should do so in a timely and appropriate fashion, and with proper monitoring and safeguards.

    1.    Providers initiating transfer should have training in EMTALA[3] and understand the requirements around transferring potentially or definitely unstable patients.

    2.    The patient must be carefully monitored prior to transfer.

    3.    The patient must be re-evaluated and the decision to transfer should be reconsidered if the patient becomes unstable or more unstable.

    4.    The hospital must have safeguards for inappropriate transfers. When the equipment to take care of the patient is present at the hospital, but the surgeon decides on his own to make a transfer, there must be safeguards to assure that the transfer is necessary, especially in an unstable patient.

---

[3] Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

**VIII. Breaches of the Standard of Care:** Kingwood Hospital.

Kingwood hospital failed to ensure an appropriate, safe and timely transfer of Ms. Kosar[.]

A.    The transfer delay of 3 hours was inappropriate for a patient with surgical sepsis.

B.    There is no evidence that hospital staff took affirmative action to inform Dr. Becker of the patient's deteriorating condition while awaiting transfer.

C.    There is no evidence that the surgeon who initiated the transfer was appropriately trained in transferring. There is no evidence the surgeon considered the vital signs and chance of death from delay in transfer. Hospital policies—or lack thereof—allowed the surgeon to decide on his own that he would initiate transfer.

D.    There is no evidence the transfer was even appropriate to begin with. Exploring the abdomen for perforated bowel is a core surgical privilege, and there is not present any justifiable reason for not operating at Kingwood when the risk of transfer exceeds the benefits—more so when the transfer is delayed.

E.    As the patient deteriorated there was no attention or reconsideration of the transfer by the hospital or of revisiting the decision by the surgeon to not operate at Kingwood.

**IX.   Causation:** Kingwood Hospital: Kingwood Hospital's institutional failures as outlined above were also a proximate cause of Ms. Kosar's death. The Hospital allowed the patient to become critically ill by progressing from sepsis to severe sepsis and finally septic shock. Kingwood Hospital failed to treat the patient within its capacity to increase her chance of survival and ultimately transferred her out in an unstable condition where she went into code upon arrival, which condition caused her to die thereafter.

Kingwood lodged no objection to Dr. Bedolla's statement of Kingwood's

8

standard of care.[4]  As a result, Kingwood has waived any objections it may have had to Dr. Bedolla's standard of care opinion.  *See* Tex. Civ. Prac. & Rem. Code § 74.351(a) ("Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.").

Kingwood did object that Dr. Bedolla's report on Kingwood's alleged breaches of the standard of care and causation were inadequate.  Specifically, Kingwood objected that while Dr. Bedolla pointed out five alleged breaches of the standard of care by Kingwood, three of those breaches, C, D, and E quoted above, addressed actions and decisions of the on-call surgeon.  Kingwood objected that it had no control over the surgeon's actions or decisions and therefore any breaches of the standard of care he committed could not be attributed to it.  At this stage of the legal proceedings, however, the legal relationship between a doctor and a hospital is not relevant and therefore not a valid objection.  *See Harvey v. Kindred Healthcare Operating, Inc.*, 578 S.W. 638, 643, n.4 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (stating that because the purpose of the expert report requirement is not to prove liability but instead to show that a claim is not baseless, it is not appropriate to dismiss a healthcare liability claim because one of the

---

[4] On appeal, Kingwood asserts that it objected to Dr. Bedolla's statement of the standard of care during the oral hearing on their motion to dismiss.  We disagree.  Section 74.351(a)'s plain language requires a defendant objecting to a medical expert's report to "file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived."  Tex. Civ. Prac. & Rem. Code § 74.351(a).  Even if we assume without deciding that a defendant could orally lodge an objection, because the oral hearing occurred long after the statutory deadline to file and serve objections had passed, Kingwood waived any objection it may have had to Dr. Bedolla's statement of the standard of care in his first expert report.

parties might have been an independent contractor). While a hospital is generally not vicariously liable for the acts or omissions of a physician over whom it lacks control, the fact that the on-call surgeon may have been an independent contractor would not be a proper basis for dismissing a healthcare liability claim under the expert report rule. *Id.* Because at this preliminary stage we do not distinguish between Kingwood's employees and independent contractors, we conclude that Dr. Bedolla's report established these alleged breaches for Chapter 74 expert report purposes.

Kingwood objected that Dr. Bedolla's alleged breach A, quoted above, was contradictory because he opined the transfer was delayed and that Kingwood "failed to treat the patient within its capacity." As a result, Kingwood asserts Dr. Bedolla's report is unclear whether he believed Kingwood should have treated Kosar or transferred her. Having reviewed Dr. Bedolla's entire report, we conclude it clearly states that Kingwood had a duty to either promptly treat Kosar's condition within the limits of its capacity, or promptly transfer her to a facility that could adequately treat her rapidly deteriorating condition. *See Harvey*, 578 S.W.3d at 651 (stating appellate courts review expert reports as a whole). In Dr. Bedolla's view, Kingwood breached the standard of care because it did neither. We conclude this adequately stated an alleged breach of the standard of care by Kingwood for Chapter 74 expert report purposes. *See Baty*, 543 S.W.3d at 697 (explaining that challenged expert report met Chapter 74 requirements and that "additional detail is simply not required at this stage of the proceedings."); *Robles v. Pinnacle Health Facilities XV, LP*, No. 14-18-00135-CV, 2020 WL 746720, at *6 (Tex. App.—Houston [14th Dist.] Feb. 13, 2020, no pet.) (mem. op.) (concluding that expert report met statutory requirements because it informed the defendant of the specific conduct called into question and provided a basis for the trial court to conclude the

10

claims have merit); *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110, 122 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding medical expert report provided a "fair summary" of how defendant breached standard of care).

Turning to Dr. Bedolla's causation opinion, Kingwood objected that it was conclusory. A conclusory statement is one that expresses a factual inference without providing the underlying facts to support that conclusion. *See Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (addressing allegation affidavit was conclusory). As quoted above, albeit in brief fashion, Dr. Bedolla linked Kingwood's listed specific breaches of the standard of care with Kosar's rapidly declining condition, which in turn led to her death from septic shock. Dr. Bedolla's opinion set forth sufficient facts to reach this conclusion and therefore his causation opinion was not conclusory. *See Robles*, 2020 WL 746720, at *6 (concluding medical expert's opinion on breach of the standard of care was not conclusory because the expert "set forth sufficient facts to support" his opinion); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486 (Tex. App.—Dallas 2010, no pet.) (concluding medical expert adequately explained the basis for his conclusion and linked that conclusion to the facts); *Mosely v. Mundine*, 249 S.W.3d 775, 781 (Tex. App.—Dallas 2008, no pet.) ("We conclude Thompson's opinion as to causation is not mere conjecture and speculation because he supported his statements with facts.").

Because Dr. Bedolla's report adequately addressed a theory of liability against Kingwood, we hold that the trial court abused its discretion when it dismissed appellants' claims against Kingwood. *See Harvey*, 578 S.W.3d at 654 (concluding trial court abused discretion when it dismissed plaintiff's claims because plaintiff's medical expert report met requirements established by section 74.351). We therefore sustain appellants' second issue on appeal.

11

## CONCLUSION

Having sustained appellants' second issue on appeal, we reverse the trial court's final judgment dismissing appellants' claims against Kingwood and remand the case to the trial court for further proceedings.


/s/    Jerry Zimmerer
Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.